Robert A. BALMER, Etta Balmer, Judith L. Bonnaure, Lisa A. Bonnaure, Kimberly A. Bonnaure, Richard O. Bonnaure, Doris B. Bonnaure, Gilbert Bonnaure, Robert A. Bonnaure, Joshua Karakis, Anton J. Kotar, Bridget A. Kotar, Courtney E. Kotar, Matthew Kotar, Rose Ann Kotar, Thomas R. Meyers, Sandra M. Meyers, John P. Prevade, John P. Prevade, Jr., Lori A. Brickner, Kelly Baronio, Mary Castelli, Lisa Desmet, Lionel J. Desmet, Rose M.V. Garlick, Joan E. Gerard, George Gerard, Russell F. Kovach, Joan L. Kovach, Kenneth R. Laing, Jr., Karen M. Laing, James R. Matje-

vich, Jennifer A. Matjevich, Maureen E. McGraw, Samuel V. Miller, Donna Moore, Stephen Shane, Cherryl Shane, Cheryl Torre, Elizabeth Vangysel, Dorothy Wolf, Richard O. Wolf, and Michael E. Walker, Appellants,

v.

**John R. PIPPY.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1997.

Decided Nov. 6, 1997.

Mary Rita Catherine Flaherty, Presto, for appellants.

Robert L. Byer, Pittsburgh, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

DOYLE, Judge.

Robert A. Balmer and forty-two other registered electors residing in Pennsylvania's 44th Legislative District (collectively, Balmer) appeal an order of the Court of Common Pleas of Allegheny County, which sustained the preliminary objections of John R. Pippy and dismissed Balmer's petition contesting Pippy's election as a Representative in Pennsylvania's General Assembly. The Court of Common Pleas held that it lacked subject matter jurisdiction to try the issue and further held that jurisdiction rested with this Court.

The record reveals the following salient facts. On November 25, 1996, the Balmer group, all of whom are registered voters in the 44th Legislative District, filed an election contest,[1] challenging the November 5, 1996 election of Pippy as a State Representative from that district. Article II, Section 5 of the Pennsylvania Constitution requires that all Senators and Representatives "shall have been citizens and inhabitants of the State four years, and inhabitants of their respective districts one year next before their election (unless absent on the public business of the United States or of this State), and shall

1. The petition to contest the election, although designated as a "Complaint," specifically states that the complaint is a petition under Section 1742 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3402.

reside in their respective districts during their terms of service." Balmer's petition alleged that Pippy had resided in Texas until approximately 1992, and had not been a citizen of Pennsylvania for at least four years prior to his election on November 5, 1996, and for that reason should not be seated as a Representative in the General Assembly.

Pursuant to Section 1739 of the Election Code, 25 P.S. § 3401, "[c]ontested nominations and elections of Senators and Representatives in the General Assembly of this Commonwealth ... shall be tried and determined by the court of common pleas of the county where the person returned as such shall reside...." 25 P.S. § 3401. Because Pippy resides in Allegheny County, Balmer filed his petition with the Court of Common Pleas of Allegheny County. At a December 13, 1996 hearing, Common Pleas concluded that the Commonwealth Court, rather than that court, had exclusive jurisdiction to hear the matter and dismissed Balmer's petition for lack of subject matter jurisdiction. (Transcript of Court of Common Pleas Hearing at 6; Reproduced Record (R.R.) at 197a.)

On December 17, 1996, Balmer "appealed"[2] that decision to this Court. After hearing argument on the issue of jurisdiction, Judge James R. Kelley, sitting as a single judge of this Court[3] issued an order[4] on January 7, 1997, dismissing Balmer's appeal. The opinion in support of that order held that the House of Representatives, and not this Court, had exclusive jurisdiction to hear the contest. Later that same day, Pippy was sworn in as the elected Representative from the 44th Legislative District. On January 21, 1997, Balmer filed an application for reargument before an en banc panel of this Court. The Court granted the application in order to address the issue of the jurisdiction of the judicial branch of government to review the constitutional qualifications of a candidate, nominee, or electee of the legislative branch of government, and the subsidiary question of when the jurisdiction of the one branch of government ceases and that of the other branch attaches.

Balmer has raised two issues which we are obliged to review: first, whether the judicial branch of government has jurisdiction to review the qualifications of a candidate for the General Assembly who has not yet been sworn in as a member of the General Assembly, when that individual comes under this Court's jurisdiction by way of an election contest; and second, *if* this Court does have jurisdiction, rather than the Legislature, whether we are a proper tribunal only to make findings and gather evidence regarding the election challenge for submission to the General Assembly. Because we conclude that *both* this Court and the Court of Common Pleas lack subject matter jurisdiction to adjudicate the election contest in *this* case, we reinstate Judge Kelley's January 7, 1997 order "dismissing the appeal;" in effect, quashing the appeal.

In the opinion of *In re Jones,* 505 Pa. 50, 476 A.2d 1287 (1984), our Supreme Court noted that neither Article II, Section 5 of the Constitution, nor any statute, conferred jurisdiction upon the courts of this Commonwealth to inquire into the qualifications of a candidate for office. *Id.* at 62, 476 A.2d at 1293. Roxanne Jones had been a candidate for nomination to the Senate of Pennsylvania from the third Senatorial District (Philadelphia) whose nominating petition and candidacy had been challenged prior to the primary election in April of 1984. Specifically, the objectors alleged that Jones did not meet the constitutional qualifications of Article II, Section 5 because, if elected, she would not have resided in her Senatorial District for at least one year prior to her election. As noted, the Supreme Court held that jurisdiction to try that issue resided exclusively with the Senate of Pennsylvania. However, following *Jones,*

---

**2.** Technically, the Court of Common Pleas should have transferred the matter to this Court under Section 5103 of the Judicial Code, 42 Pa.C.S. § 5103.

**3.** Pa.R.A.P. 3102(c)(2) provides that a single judge of the Commonwealth Court may constitute a quorum of the Court for the purposes of conducting hearings and making determinations in any election matter.

**4.** The January 7, 1997 order of this Court was filed with the notation "opinion to follow." The supporting opinion was filed on January 14, 1997.

the Legislature, on April 18, 1985,[5] amended Sections 910 and 977 of the Pennsylvania Election Code [6] to confer on the courts jurisdiction to inquire into *the nomination petition of a candidate. See In re Street,* 102 Pa.Cmwlth. 155, 516 A.2d 791 (1986).

The amendment to Section 910 of the Election Code, 25 P.S. § 2870, requires all candidates to submit an affidavit to accompany their nomination petition which states that the candidate satisfies the requirements of Sections 5 and 7 of Article II of the Constitution. In addition, Section 977 of the Code, 25 P.S. § 2937, was amended to provide that if the court finds "any accompanying or appended affidavit [to the nomination petition or nomination papers] contains a material defect or error, it shall be set aside. For purposes of this section, a nomination petition or paper shall include all affidavits required to be filed with such nomination petition or paper under this act." 25 P.S. § 2937.

Therefore, the courts do have jurisdiction to inquire into the veracity of a candidate's nomination petition. If a court finds that the candidate has filed a false affidavit, that is, he or she does not meet the qualifications set forth in the Constitution, the appropriate court has jurisdiction to set aside the nomination petition and strike the candidate's name from the ballot. Yet, Article II, Section 9 of the Constitution provides that "[e]ach House shall choose its other officers, **and shall judge the election and qualifications of its members.**" (Emphasis added.) Thus we are presented with the engagement, and possible friction, between the statutory provisions of the Election Code, and the constitutional provision in Article II, Section 9, which reposits the exclusive authority to judge the qualifications of members of the House of Representatives and Senate to those bodies.

In the case before us, therefore, we must identify the point at which the jurisdiction conveyed to the courts under the Elec-

tion Code ends and the exclusive jurisdiction of the Legislature to judge its members' qualifications begins. Accordingly, we now make clear that the judiciary has jurisdiction over a challenge to the constitutional qualifications of a **candidate** for the General Assembly only prior to his or her election, whether that candidate was nominated by his or her party at a primary election, chosen by the political party to replace a nominated candidate,[7] or is an independent candidate whose name is on the ballot by way of having circulated nominating papers.[8] At that point, when the candidate has been elected, he or she is no longer a "candidate;" he or she is a member-elect of the Legislature and, hence, the jurisdiction of the judiciary is extinguished, and the exclusive jurisdiction of the Legislature attaches.

This Court has set aside nomination petitions based on false candidate affidavits in the past. In *In re Prendergast,* 673 A.2d 995 (Pa.Cmwlth.), *aff'd,* 543 Pa. 498, 673 A.2d 324 (1996), this Court heard a petition to set aside the nomination petition of a candidate for Representative in the General Assembly. The petition was filed with this Court on February 20, 1996, prior to the primary election and approximately eight months prior to the general election. The petitioner, Francis X. McKee, sought to have Prendergast, a democratic candidate for Representative from the 196th Legislative District, removed from the ballot for the primary election. McKee alleged that Prendergast would not have been a resident of Pennsylvania for four years prior to the November 5, 1996 general election, and thus she allegedly had submitted a false candidate's affidavit. This Court concluded that Prendergast did not qualify to run for the General Assembly under Article II, Section 5 of the Constitution and set aside her nomination petition. In affirming our decision, our Supreme Court, citing the amendments to the Election Code, concluded that a challenge to Prendergast's nomination petition was clearly justiciable and that juris-

---

5. Act of April 18, 1985, P.L. 5.

6. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2602–3591.

7. *See* Section 979 of the Election Code, 25 P.S. § 2939.

8. *See* Section 951 of the Election Code, 25 P.S. § 2911.

diction to try the issue was vested in this Court under Section 910 of the Election Code.

 The case presently before us presents a somewhat similar issue in that Balmer is also alleging that Pippy did not reside in Pennsylvania for at least four years prior to his election on November 5, 1996, as Article II, Section 5 of the Constitution requires. Likewise, Balmer alleges that Pippy's candidate's affidavit is false because Pippy did not meet the residency requirements of the Constitution. However, unlike *Prendergast,* the challenge in the present case came *after* Pippy had been elected. Accordingly, Article II, Section 9 of the Pennsylvania Constitution is controlling and dedicates the power to determine the qualifications of **members** of the Senate and House of Representatives exclusively to each of those bodies. *See In re Jones,* 505 Pa. 50, 476 A.2d 1287 (1984). As of November 5, 1996, the date of Pippy's election, he became a member-elect and the jurisdiction of the unified judiciary of this Commonwealth to hear the challenge to Pippy's nomination petition was extinguished. Thus, when Balmer filed his contest on November 25, 1996, *both* this Court and the Court of Common Pleas lacked subject matter jurisdiction over the contest.[9]

Accordingly, the January 7, 1997 order of Judge Kelley, dismissing Petitioners' appeal for lack of subject matter jurisdiction is hereby reinstated.[10]

## ORDER

NOW, November 6, 1997, the January 7, 1997 order of Judge Kelley dismissing the appeal in the above-captioned matter for lack of subject matter jurisdiction is hereby reinstated.

FLAHERTY and LEADBETTER, JJ., did not participate in the decision in this case.

---

9. We note that the outcome would be identical if the candidate had been substituted as a candidate following the death of a political party's nominated candidate. In that instance, the substituted candidate would also have to file an affidavit stating that he meets the constitutional qualifications of a candidate pursuant to Section 981.1 of the Election Code, 25 P.S. § 2941.1. (Section 981.1 was added by Section 6 of the Act of April 18, 1985, P.L. 5.) In addition, a third party candidate would also have to file an affidavit to accompany his or her nomination papers which stated that he or she meets the constitutional qualifications for office. Section 951(e) of the Election Code, 25 P.S. 2911(e). Thus both of the above instances would be reviewable by the Court prior to the candidate's election to office.

10. We note that Pennsylvania Rule of Appellate Procedure 1113 governs the timing for filing a petition for allowance of appeal. This rule provides, in relevant part:

(a) **General Rule.** Except as otherwise prescribed by this rule, a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days of the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed. If a timely application for reargument is filed in the Superior Court or Commonwealth Court by any party, the time for filing a petition for allowance of appeal for all parties shall run from the entry of the order denying reargument or from the entry of the decision on reargument, whether or not that decision amounts to a reaffirmation of the prior decision.

. . . .

(c) **Special Provisions.** Notwithstanding any other provision of this rule, a petition for allowance of appeal from an order in any matter arising under any of the following shall be filed within *ten* days after the entry of the order sought to be reviewed:

(1) **Pennsylvania Election Code.**

. . . .

Pa.R.A.P. 1113 (emphasis added).

Because the order of this Court dismissing Balmer's appeal was filed on January 7, 1997, even *assuming* that jurisdiction was vested in this Court, Balmer was required to file any appeal process with the Supreme Court by January 17, 1997. Because Balmer did not file his application for reargument with this Court until January 21, 1997, he was already out of time to file an appeal and this Court improvidently granted Balmer's application for reargument.

We further note that, while not controlling here, Pa.R.A.P. 2543 was amended, effective on September 5, 1997, to prohibit applications for reargument from final orders of intermediate appellate courts in election matters.