In re Nomination Petition of John R. PIP-PY, Candidate for Representative in the General Assembly from the 44th Legislative District.

John J. Hiles, Randy W. Schott, and John E. Tuite, Objectors.

Commonwealth Court of Pennsylvania.

Heard April 1, 1998.
Decided April 7, 1998.
Publication Ordered May 5, 1998.

William M. Sloan, Carlisle, and Reizdan B. Moore, Harrisburg, for objectors.

James T. Tallman and H. Woodruff Turner, Pittsburgh, for John Pippy.

KELLEY, Judge.

Presently before the court is the petition to set aside the nomination petition of John R. Pippy (Candidate) as a candidate for the Republican nomination to the office of State Representative in the Pennsylvania General Assembly for the 44th Legislative District. The two-count petition was filed in this court on March 17, 1998, by John J. Hiles, Randy W. Schott and John E. Tuite (collectively, Objectors).[1]

In Count I of the petition, the Objectors claim that the candidate's affidavit accompanying the nomination petition, as required by section 910 of the Pennsylvania Election Code,[2] contains a material defect in that it contains a false statement. The Objectors contend that the candidate's affidavit contains a false statement in that the Candidate swore that he is eligible for the office of State Representative when, in fact, he is not eligible for that office under Article 2, Section 5 of the Pennsylvania Constitution.[3] As a result, the Objectors ask this court to enter an order: setting aside the Candidate's nomination petition; directing the Secretary of the Commonwealth to not certify the Candidate as a candidate for the office of Representative of the 44th Legislative District; declaring the Candidate to be disqualified from holding this office or any other office of trust or profit in the Commonwealth pursuant to section 1851 of the Election Code,[4] and, pur-

1. The court initially finds that the Objectors are all Republican electors in the 44th Legislative District. As a result, they have standing to object to the Candidate's nomination papers. *In re Duncan*, 102 Pa.Cmwlth. 99, 516 A.2d 776 (1982).

2. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2870. Section 910 provides, in pertinent part:

Each candidate for any State, county, city, borough, incorporated town, township, ward, school district, poor district, election district, party office, party *delegate* or *alternate* ... shall file with his nomination petition his affidavit stating—... (d) that he is eligible for such office....

3. Article 2, Section 5 of the Pennsylvania Constitution provides:

Senators shall be at least twenty-five years of age and Representatives twenty-one years of age. They shall have been citizens and inhabitants of the State four years, and inhabitants of their respective districts one year next before their election (unless absent on the public business of the United States or of this State), and shall reside in their respective districts during their terms of service.

4. Section 1851 of the Election Code provides, in pertinent part:

Any person who shall, while a candidate for office, be guilty of bribery, fraud or willful violation of any provision of this act, shall be forever disqualified from holding said office or any other office of trust or profit in this Commonwealth.
25 P.S. § 3551.

suant to section 1802.1 of the Election Code,[5] to award court costs, attorney fees, investigation costs and similar costs.[6]

As a preliminary matter, we note that on March 27, 1998, the Candidate filed preliminary objections to the Objectors' petition. In the preliminary objections, the Candidate alleges that: (1) this court lacks subject matter jurisdiction under the Election Code to entertain the Objectors' petition; and (2) Count I of the Objectors' petition fails to state an objection for which relief can be granted in that it presents a nonjusticiable claim for which this court cannot grant relief.[7]

▍ In ruling on these preliminary objections, this court must accept as true all well pleaded material allegations in the petition as well as all inferences reasonably deduced therefrom. *Envirotest Partners v. Department of Transportation,* 664 A.2d 208 (Pa.Cmwlth.1995). This court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.* With these standards in mind, we consider the Candidate's preliminary objections.

In his preliminary objections, the Candidate initially claims that this court is without jurisdiction under the Election Code to entertain the instant petition. We do not agree.

We initially note that in ascertaining the intention of the General Assembly in the enactment of a statute, this court must presume that the General Assembly intended the entire statute to be effective and certain. 1 Pa.C.S. § 1922; *Black v. Billy Penn Corp.,* 72 Pa.Cmwlth. 628, 457 A.2d 192 (1983). Thus, this court must determine the legislative intent from the totality of a statute, and render an interpretation which gives effect to all of its provisions. *Wolfe v. Department of Transportation, Bureau of Traffic Safety,* 24 Pa.Cmwlth. 261, 355 A.2d 600 (1976).

▍ In addition, the provisions of the Election Code must be liberally construed so as not to deprive an individual of his right to run for office or the voters of their right to elect the candidate of their choice. *In re Silcox,* 543 Pa. 647, 674 A.2d 224 (1996); *In re Williams,* 155 Pa.Cmwlth. 494, 625 A.2d 1279 (1993). However, the provisions of the Election Code relating to the form of nominating petitions and the accompanying affidavits are not mere technicalities, but are necessary measures to prevent fraud and to preserve the integrity of the election process. *In re Cianfrani,* 467 Pa. 491, 359 A.2d 383 (1976); *In re Carlson,* 60 Pa.Cmwlth. 170,

---

5. Section 1802.1 of the Election Code states, in pertinent part:

> Any candidate for State ... office who knowingly makes a false statement regarding his eligibility or qualifications for such office in his candidate's affidavit shall, in litigation which results in the removal of the candidate from the ballot, be liable for court costs, including filing fees, attorney fees, investigation fees and similar costs....

25 P.S. § 3502.1.

6. In Count II of the petition, the Objectors claim that Act 18 of 1998, which amends the provisions of the Election Code, violates various provisions of both the United States and Pennsylvania Constitutions. However, because the Commonwealth is not a party to this action, and because the Objectors failed to serve the Pennsylvania Attorney General with a copy of the instant petition, this claim has been waived and will not be addressed on the merits. *See* Pa.R.Civ.P. No. 235; Pa.R.A.P. 521; *Kepple v. Fairman Drilling Co.,* 532 Pa. 304, 615 A.2d 1298 (1992); *Jarrett's*

*Lounge v. Board of License and Inspection Review of the City of Philadelphia,* 168 Pa.Cmwlth. 26, 648 A.2d 1353 (1994), *petition for allowance of appeal denied,* 540 Pa. 624, 657 A.2d 494 (1995); *Spidle v. Livingston Construction Company, Inc.,* 311 Pa. Superior Ct. 201, 457 A.2d 565 (1983).

7. In his preliminary objections the Candidate also claims that Count II of the Objectors' petition fails to state an objection for which relief may be granted, and the petition as a whole fails to state an objection for which relief may be granted because the Objectors' lack standing. However, as noted above, any claims raised in Count II of the Objectors' petition have been waived based on their failure to serve the Attorney General. In addition, as stated in Footnote 1 of this opinion, the court has determined that the Objectors have standing in this matter as they are all electors in the 44th Legislative District and are all members of the Republican Party. Accordingly, we need not address the preliminary objection relating to Count II of the petition, and the preliminary objection relating to the Objectors' standing is overruled.

430 A.2d 1210 (1981), *aff'd,* 494 Pa. 139, 430 A.2d 1155 (1981). The requirements of sworn affidavits in the Election Code are to insure the legitimacy of information crucial to this process. *Cianfrani.* Thus, the policy of liberal reading of this statute cannot be distorted to emasculate those requirements necessary to assure the probity of the election process. *Id.*

We shall now consider the relevant provisions of the Election Code which apply to our review of the instant matter. In its present form, section 910 requires a candidate for state office to file with his nomination petition an affidavit stating, *inter alia,* "that he is eligible for such office". 25 P.S. § 2870. In addition, as presently enacted, section 977 states, in pertinent part:

> All nomination petitions and papers received and filed ... shall be deemed to be valid, unless ... a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside.... If the court shall find that said nomination petition or paper is defective under the provisions of section 976 [8] ... it shall be set aside. If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the said court may specify.

25 P.S. § 2937. Finally, section 1802.1 provides, in pertinent part, that any candidate for state office "who knowingly makes a false statement regarding his eligibility or qualifications for such office in his candidate's affidavit shall, in litigation which results in the removal of the candidate from the ballot, be liable for court costs, including filing fees, attorney fees, investigation fees and similar costs". 25 P.S. § 3502.1.

■ Reading all of the foregoing sections of the Election Code, and giving effect to all of these provisions, it is apparent that this court has jurisdiction to consider the Objectors' petition. Under section 910, the Candidate was required to execute the candidate's affidavit and swear or affirm, *inter alia,* that he was eligible for the office of State Representative. As the Pennsylvania Supreme Court has previously determined, an affidavit executed pursuant to section 910 that contains a false statement "must be *at least* equated with the failure to execute the affidavit", and renders the candidate's nomination petition "void and invalid". *Cianfrani,* 467 Pa. at 494, 359 A.2d at 384 (emphasis in original).

Under section 977, the Candidate's nomination petition would be presumed to be valid unless the Objectors presented the instant petition to this court specifically setting forth this alleged patent defect. In addition, based on the incorporation of section 976, section 977 requires this court to set aside the Candidate's nomination petition if we find any material errors or defects on the face of the nomination petition or the appended or accompanying affidavits. Clearly, such a patent material error or defect, if proven, could compel this court to set aside the Candidate's nomination petition.

Moreover, section 1802.1 specifically empowers this court to impose costs and fees upon the Candidate that flow from a court action challenging his nomination petition. Under that section, the Candidate is liable for court costs, attorney fees and other fees flowing from this "litigation which result[ed] in the removal of the candidate from the ballot" if this court determines that he "knowingly [made] a false statement regarding his eligibility or qualifications for such office in his candidate's affidavit". 25 P.S. § 3502.1.

In support of his claim that this court is without jurisdiction to entertain the instant petition, the Candidate directs our attention to *In re Jones,* 505 Pa. 50, 476 A.2d 1287 (1984) and *Balmer v. Pippy,* 702 A.2d 587 (Pa.Cmwlth.1997). However, neither of these decisions supports this conclusion.

8. Section 976 of the Election Code provides that no nomination petition shall be permitted to be filed where "it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits...." 25 P.S. § 2936.

From the outset, it is important to acknowledge that in *Jones*, it was stated by former Chief Justice Nix that:

> The argument presented [in this case] relies upon the unstated premise that Article 2, section 5 [of the Pennsylvania Constitution] is self-executing and authorizes court involvement. An analysis forces the conclusion that neither Article 2 in its entirety, nor section 5 specifically, confers authority in the court to act in this area.
>
> Article 2 is concerned with the composition, powers and duties of the legislature. Nothing in this article even remotely suggests the conference of jurisdiction upon the courts to test the qualifications of the members of the General Assembly. Indeed, section 9 of Article 2 [9] expressly states that each body of the General Assembly shall be the judge of the qualifications of its members. Moreover, Article 2, section 5 by its express terms refers only to the qualifications of the *members* of the body. There is no reference to persons who file to run for the office.

*Jones*, 505 Pa. at 57–58, 476 A.2d at 1290–91 (emphasis in original). Thus, he concluded "Article 2, section 5 [of the Pennsylvania Constitution] does not by its terms grant jurisdiction to the courts to inquire into the qualifications of one seeking to run for ... office. Moreover, the legislature has not expressly attempted to confer such power." *Id.* at 62, 476 A.2d at 1293.

However, in that opinion it was specifically noted that "the issue [in this case] *is not* whether a nomination petition may be set aside where it is established that the petition contained a false candidate's affidavit." *Id.* at 56, 476 A.2d at 1290 (emphasis in original and footnote omitted). Indeed, as former Chief Justice Nix stated:

> As has been repeatedly stated [in this opinion], there was a failure to set forth this argument in the specific terms of section 977; even more glaring is the fact that the argument is not in any way related to an objection to the nomination petition under that section. To the contrary, the

clear implication of the objectors' articulation of their position was that Article 2, section 5 itself conferred jurisdiction for that complaint in the courts. Thus the objectors did not seek to bring the Article 2, section 5 argument within the purview of section 977.

*Id.* at 66, 476 A.2d at 1295. Thus, the issue addressed by Chief Justice Nix in *Jones* is patently inapposite to that presented in the instant case. *See also In re Street*, 102 Pa. Cmwlth. 155, 516 A.2d 791, 792 (1986) ("The argument advanced by the objectors in the *Jones* case, as framed by the Pennsylvania Supreme Court, was that even if the candidate won both the primary and the general election, the next duly constituted Senate might refuse to seat her, *if* they concluded that the candidate, who would then be an elected *member* of that body, had not met all of the qualifications set forth in Article 2, Section 5 of the Constitution of Pennsylvania").

Moreover, as the Pennsylvania Supreme Court has subsequently noted, the opinion in *Jones* is "a plurality opinion of this Court which has no precedential value ... [and] established no controlling precedent." *In re Hughes*, 516 Pa. 90, 99 n. 5, 532 A.2d 298, 303 n. 5 (1987). As a result, the Candidate's assertion that *Jones* precludes our review of this matter is meritless.

Likewise, the Candidate's reliance on this court's opinion in *Balmer v. Pippy* is misplaced. In *Balmer*, this court considered whether we had subject matter jurisdiction to consider a *post-election* challenge to a candidate's election to the General Assembly based on a false candidate's affidavit in his nomination petition. *Balmer*, 702 A.2d at 589. In determining that we did not have subject matter jurisdiction in that case, we affirmatively stated:

> [W]e now make clear that the judiciary has jurisdiction over a challenge to the constitutional qualifications of a **candidate** for the General Assembly only prior to his or her election, whether that candidate was

---

9. Article 2, Section 9 of the Pennsylvania Constitution provides, in pertinent part:

Each House shall choose its other officers, and shall judge of the election and qualifications of its members.

nominated by his or her party at a primary election, chosen by the political party to replace a nominated candidate, or is an independent candidate whose name is on the ballot by way of having circulated nominating papers.[10] At that point, when the candidate has been elected, he or she is no longer a "candidate"; he or she is a member-elect of the Legislature and, hence, the jurisdiction of the judiciary is extinguished, and the exclusive jurisdiction of the Legislature attaches [pursuant to Article 2, Section 9 of the Pennsylvania Constitution].

10. It should be noted that section 102(a) of the Election Code states that, when used in that statute, "[t]he word **"candidate"** shall, unless the context otherwise requires, include both candidates for nomination and election." 25 P.S. § 2602(a).

11. The view that Article 2, Section 9 confers jurisdiction upon the General Assembly to adjudge the qualifications of its members *only after a candidate has been elected to that body* is consistent with the interpretation of similar state constitutional provisions by the courts in other jurisdictions. *See, e.g., Hayes v. Gill,* 52 Haw. 251, 473 P.2d 872 (1970) (Provision of the Hawaii Constitution that "[e]ach house shall be the judge of the elections, returns and qualifications of its own members" did not preclude the court from determining whether a candidate, who was required to certify that she would "qualify under the law for the office [s]he is seeking", did qualify for such office); *State ex rel. Gramelspacher v. Martin Circuit Court,* 231 Ind. 114, 107 N.E.2d 666 (1952) (Provision of the Indiana Constitution that "[e]ach House, when assembled, shall ... judge the elections, qualifications, and returns of its own members" did not divest the court of jurisdiction over primary election recount and contest proceedings); *Daley v. Morial,* 205 So.2d 213 (La.Ct.App.1967), *cert. denied,* 251 La. 679, 205 So.2d 442 (1967) (Provision of the Louisiana Constitution that "[e]ach house shall be the judge of the qualifications, election and returns of its own members" did not preclude the court from considering a contest to a party nominee as the provision applied only to those who have been elected as members of the Legislature); *Snyder v. Glusing,* 308 Md. 411, 520 A.2d 349 (1987) (Provision of the Maryland Constitution that "[e]ach House shall be judge of the qualifications and elections of its members" did not preclude the legislature from granting the court the statutory authority to set aside the primary election results nominating an individual to run as the candidate of a political party in the general election); *State ex rel. Gralike v. Walsh,* 483 S.W.2d 70 (Mo.1972) (Provision of the Missouri Constitution that "[e]ach house ... shall be the sole judge of the qualifications, election and returns of its own members" applies after the general election and did not preclude the court from determining

*Id.* at 590 (emphasis in original and footnotes omitted).[11] Thus, the Candidate's contention that *Balmer* precludes our review of this matter is equally meritless.

At this juncture, it is important to consider the recent history of the sections of the Election Code that are germane to the instant matter. As we have previously stated:

[T]he *Jones* Court stated that neither Article 2 of the Constitution in its entirety, nor Section 5 specifically, conferred authority on the courts to inquire into the qualifica-

whether one who seeks to be a candidate in the primary election possesses the requisite qualifications for the office); *Leu v. Montgomery,* 31 N.D. 1, 148 N.W. 662 (1914) (Provision of the North Dakota Constitution that each branch of the legislature is made the judge of the election and qualifications of its members did not prevent the legislature from vesting jurisdiction in the courts to hear and decide contests involving the nomination of candidates for such office at a primary election); *State ex rel. Cloud v. Election Board,* 169 Okla. 363, 36 P.2d 20 (1934) (Provision of the Oklahoma Constitution that "each House shall be the judge of the elections, returns, and qualifications of its own members" has, and can have, no field of operation until after the election, and did not divest court of jurisdiction to determine whether nominee for the office of representative was eligible for that office); *Comer v. Ashe,* 514 S.W.2d 730 (Tenn.1974) (Provision of the Tennessee Constitution that "[t]he Senate and House of Representatives, when assembled, shall ... be judges of the qualifications and election of its members" was operative only when the General Assembly was in session and did not divest the court of jurisdiction or authority to determine the eligibility of a candidate for the State Senate in the general election); *State ex rel. O'Connell v. Dubuque,* 68 Wash.2d 553, 413 P.2d 972 (1966) (Provision of the Washington Constitution that "[e]ach house shall be the judge of the election, returns and qualifications of its own members" did not divest the court of jurisdiction to determine the qualifications of candidates in a primary election). *But cf. In re McGee,* 36 Cal.2d 592, 226 P.2d 1 (1951) (Provision of the California Constitution that "[e]ach house shall ... [be] judge of the qualifications, elections, and returns of its members" precluded court from considering challenge to candidate's eligibility for office after primary election); *State ex rel. McGrath v. Erickson,* 203 Minn. 390, 281 N.W. 366 (1938) (Provision of the Minnesota Constitution the "[e]ach house shall be the judge of the election, returns and eligibility of its own members" precluded the court from inquiring into the eligibility of a candidate for the state senate who obtained a proper certificate of nomination at a primary election).

tions of one seeking to run for office, *Id.* at 62, 472 [476] A.2d at 1293. The Court further noted that the legislature had not expressly attempted to confer such power, *id.*, and that Section 977 of the [Election Code] was the sole and exclusive remedy for challenging a person's right to run for political office in Pennsylvania. *Id.* at 65 n. 13, 476 A.2d at 1294 n. 13.

Since the holding of *Jones*, however, the legislature has specifically addressed this deficiency of power in the courts by amending Section 910 of the Election Code to require that:

> In cases of petitions for candidates for the General Assembly, the candidate's affidavit shall state (1) that the candidate will satisfy the eligibility requirements contained in Sections 5 and 7 of Article II of the Constitution of Pennsylvania [and] ... (3) that the candidate shall have been a citizen and inhabitant of Pennsylvania four (4) years and an inhabitant of the respective district one (1) year next before the election (unless absent on the public business of the United States or of this State). ...

Section 3 of the Act of April 18, 1995, P.L. 5, No. 4 (Act 4 of 1985), and by amending Section 977 of the [Election] Code to provide, that if this Court finds:

> any accompanying or appended affidavit [to a nomination petition] contains a material defect or error, it shall be set aside. For purposes of this section, a nomination petition or paper shall include all affidavits required to be filed with such nomination petition or paper under this Act.

Section 4 of Act 4 of 1985.

Pursuant to the legislative authority granted by Act 4 of 1985, we are now confronted with a situation which requires us to review a candidate's qualifications challenged by a petition alleging a defect in the candidate's affidavit. As the *Jones* court acknowledged, a false candidate's affidavit is a fatal defect which cannot be amended and would require the setting aside of the nomination petition. 505 Pa. at 56 n. 5, 476 A.2d [at] 1290 n. 5, (citing [*Cianfrani* ] ).

*Street,* 516 A.2d at 792–93. *Accord In re Prendergast,* 543 Pa. 498, 673 A.2d 324 (1996).

Act 18 of 1998, passed by the General Assembly and signed by the Governor of Pennsylvania on February 13, 1998, removes the amendments to sections 910 and 977 of the Election Code that were added by Act 4 of 1985. The Candidate submits that, based on the enactment of Act 18 of 1998, this court was divested of jurisdiction to consider the instant petition. Again, we do not agree.

As noted above, section 910 of the Election Code still requires a candidate seeking a seat in the Pennsylvania House of Representatives to execute a candidate's affidavit in which he swears or affirms "that he is eligible for such office", and to file the affidavit with his nomination petition. 25 P.S. § 2870. By incorporating the provisions of section 976, section 977 still requires this court to set aside the nomination petition of a candidate if we determine that it is defective because "it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits" 25 P.S. §§ 2936, 2937.[12] Finally, and quite impor-

**12.** As noted above, a false candidate's affidavit must at least be equated with the candidate's failure to execute the affidavit, and a nomination petition containing such an affidavit is void and invalid. *Cianfrani.* If such a material error or defect in a nomination petition is found by this court, we would be compelled to set aside the nomination petition under section 977. *Id.; In re Cooper,* 163 Pa.Cmwlth. 430, 643 A.2d 717 (1994). Clearly, if a nomination petition includes a candidate's affidavit in which the candidate states that he is eligible for the office he seeks, and he does not, in fact, meet the requirements of Article 2, Section 5, such petition may be set aside by this court. *Prendergast; Cianfra-* ni; *In re Lesker,* 377 Pa. 411, 105 A.2d 376 (1954); *Cooper; Street; In re Vidmer,* 65 Pa. Cmwlth. 562, 442 A.2d 1203 (1982), *aff'd,* 497 Pa. 642, 444 A.2d 100 (1982). *See also Hughes* (Involving a petition to set aside the nomination petition of a candidate based on his inability to hold the office he sought under the provisions of Article 2, Section 7 of the Pennsylvania Constitution); *In re O'Pake,* 54 Pa.Cmwlth. 462, 422 A.2d 209 (1980) (Involving a petition to set aside the nomination petition of a candidate based on his inability to hold the two incompatible offices he sought under the provisions of Article 2, Section 6 and Article 4, Section 6 of the Pennsylvania Constitution).

tantly, section 1802.1 still states, in pertinent part, that "[a]ny candidate for State . . . office who knowingly makes a false statement *regarding his eligibility or qualifications for such office in his candidate's affidavit shall, in litigation which results in the removal of the candidate from the ballot, be liable for court costs, including filing fees, attorney fees, investigation fees and similar costs* " 25 P.S. § 3502.1 (emphasis added).

▮▮▮ If this court is without jurisdiction, as the Candidate contends, the foregoing provisions of the Election Code would be rendered meaningless. We cannot read these provisions in such a manner. Clearly, when read together, the foregoing sections of the Election Code contemplate that this court may set aside a nomination petition containing a false statement regarding the candidate's eligibility to hold the office that he seeks, and the candidate may be liable for the court costs, attorney fees and other similar fees flowing from that action. Such a construction gives full and certain effect to all of the provisions of the Election Code. 1 Pa.C.S. § 1922; *Black*; *Wolfe*. In addition, such a construction furthers the laudable goal of preserving the integrity and probity of the election process. *Cianfrani*; *Carlson*. Accordingly, the Candidate's first preliminary objection is overruled.[13]

13. Although we have resolved this issue under the provisions of the Election Code, we believe that further comment is required. It is important to dispel the notion that the General Assembly, through its legislative enactments, could preclude a citizen of this Commonwealth from obtaining judicial relief for a violation of his rights as guaranteed under the Pennsylvania Constitution. When properly presented, such a claim may be addressed in a judicial forum regardless of any legislative acts. As the United States Circuit Court for the Pennsylvania District stated long ago:

Legislation is the exercise of sovereign authority. High and important powers are necessarily vested in the Legislative body; whose acts, under some forms of government, are irresistible and subject to no controul. In *England*, from whence most of our legal principles and legislative notions are derived, the authority of Parliament is transcendant and has no bounds.

"The power and jurisdiction of Parliament, says *Sir Edward Coke*, is so transcendant and absolute, that it cannot be confined, either for causes or persons, within any bounds. . . . It has sovereign and uncontroulable authority in the making, confirming, enlarging, restraining, abrogating, repealing, reviving, and expounding of laws, concerning matters of all possible denominations, ecclesiastical or temporal, civil, military, maritime, or criminal: This being the place where that absolute despotic power, which must in all governments reside somewhere, is entrusted by the constitution of these kingdoms. All mischiefs and grievances, operations and remedies, that transcend the ordinary course of the laws, are within the reach of this extraordinary tribunal. It can regulate or new model the succession to the crown; as was done in the reign of *Henry* VIII. and *William* III. It can alter the established religion of the land; as was done in a variety of instances, in the reigns of king *Henry* VIII. and his three children. It can change and create afresh even the constitution of the kingdom and of Parliaments themselves; as was done by the act of union, and the several statutes for triennial and septennial elections. It can, in short do every thing that is not naturally impossible; and therefore some have not scrupled to call its power by a figure rather too bold, the omnipotence of Parliament. True it is, that what the Parliament doth, no authority upon earth can undo." (I *Bl. Com.* 160.)

From this passage it is evident, that, in *England*, the authority of the Parliament runs without limits, and rises above controul. It is difficult to say what the constitution of *England* is; because, not being reduced to written certainty and precision, it lies entirely at the mercy of the Parliament: It bends to every governmental exigency; it varies and is blown about by every breeze of legislative humour or political caprice. Some of the judges in *England* have had the boldness to assert, that an act of Parliament, made against natural equity, is void; but this opinion contravenes the general position, that the validity of an act of Parliament cannot be drawn into question by the judicial department: It cannot be disputed, and must be obeyed. The power of Parliament is absolute and transcendant; it is omnipotent in the scale of political existence. Besides, in *England* there is no written constitution, no fundamental law, nothing visible, nothing real, nothing certain, by which a statute can be tested. In *America* the case is widely different: Every State in the Union has its constitution reduced to written exactitude and precision.

What is a Constitution? It is the form of government, delineated by the mighty hand of the people, in which certain first principles of fundamental laws are established. The Constitution is certain and fixed; it contains the permanent will of the people, and is the supreme law of the land; it is paramount to the power of the Legislature, and can be revoked or altered only by the authority that made it. The life-giving principle and death-doing stroke must proceed from the same hand.

■ In his preliminary objections, the Candidate next claims that Count I of the Objectors' petition fails to state an objection for which relief can be granted in that it presents a nonjusticiable claim for which this court cannot grant relief. In essence, the Candidate submits that because he is currently serving as a member of the General Assembly, any claims relating to his reelection to that position present a nonjusticiable "political question".[14] We do not agree.

It is important to keep in mind the issue before the court in the instant matter. In this case, we are *not* considering: whether or not the Candidate was properly elected to his present seat in the General Assembly; whether or not the Candidate was properly seated by the House of Representatives when elected to serve in that body; nor whether or not the Candidate will be seated if he is again elected to serve in that body. Article 2, Section 9 of the Pennsylvania Constitution certainly precludes such inquiries. *Balmer.*

In this case we are merely considering whether the Candidate's nomination petition for election to the General Assembly should be set aside because the candidate's affidavit contains a false statement regarding his eligibility or qualifications for office. As outlined above, it is abundantly clear that such an action is contemplated by, and provided for, in the provisions of the Election Code.

The Candidate cites no authority for the proposition that because he was once elected to serve in the General Assembly any subsequent elections in which he seeks to again be

What are Legislatures? Creatures of the constitution; they owe their existence to the Constitution: they derive their powers from the Constitution: It is their commission; and, therefore, all their acts must be conformable to it, or else they will be void. The Constitution is the work or will of the People themselves, in their original, sovereign, and unlimited capacity. Law is the work or will of the Legislature in their derivative and subordinate capacity. The one is the work of the Creator, and the other of the Creature. The Constitution fixes limits to the exercise of legislative authority, and prescribes the orbit within which it must move. In short, gentlemen, the Constitution is the sun of the political system, around which all Legislative, Executive and Judicial bodies must revolve. Whatever may be the case in other countries, yet in this there can be no doubt, that every act of the Legislature, repugnant to the Constitution, is absolutely void.

* * *

In the thirty-second section of the ... Constitution, it is ordained; "that all elections, whether by the people or in general assembly, shall be by ballot, free and voluntary." (*Const.Penn.Sect.32.*)

Could the Legislature have annulled th[is] article[ ], respecting.. elections by ballot? As to these points there was no devolution of power; the authority was purposely withheld, and reserved by the people to themselves. If the Legislature had passed an act declaring, that, in future, there should be no trial by Jury, would it have been obligatory? No: It would have been void for want of jurisdiction, or constitutional extent of power. The right of trial by Jury is a fundamental law, made sacred by the Constitution, and cannot be legislated away. The Constitution of a State is stable and permanent, not to be worked upon by the temper of the times, nor to rise and fall with the tide of events: notwithstanding the competition of opposing interests, and the violence of contending parties, it remains firm and immovable, as a mountain amidst the strife of storms, or a rock in the ocean amidst the raging of the waves. I take it to be a clear position; that if a legislative act oppugns a constitutional principle, the former must give way, and be rejected on the score of repugnance. I hold it to be a position equally clear and sound, that, in such case, it will be the duty of the Court to adhere to the Constitution, and to declare the act null and void. The Constitution is the basis of legislative authority; it lies at the foundation of all law, and is a rule and commission by which both Legislators and Judges are to proceed. It is an important principle, which, in the discussion of questions of the present kind, ought never to be lost sight of, that the Judiciary in this country is not a subordinate, but co-ordinate, branch of the government.

*Vanhorne's Lessee v. Dorrance,* 2 Dall. 304, 307–309, 1 L.Ed. 391 (1795). Thus, the judicial branch of our government may, indeed must, redress a constitutional violation when it is properly presented before that forum. Such an exercise of the inherent judicial power is necessarily beyond the reach of enactments by the General Assembly.

**14.** As the Pennsylvania Supreme Court has stated:

There may be certain powers which our Constitution confers upon the legislative branch, however, which are not subject to judicial review. A challenge to the Legislature's exercise of a power which the Constitution commits exclusively to the Legislature presents a nonjusticiable "political question".

*Sweeney v. Tucker,* 473 Pa. 493, 508, 375 A.2d 698, 705 (1977).

elected to that body are not governed by the provisions of the Election Code. Presumably, no such authority is cited because none exists. In short, the Election Code governs the instant action seeking to set aside the Candidate's nomination petition for his election to a seat in the General Assembly, and such relief may be granted if we deem it proper under its provisions. Accordingly, the Candidate's final preliminary objection is overruled. We may now turn to a consideration of the merits of the instant petition to set aside the Candidate's nomination petition.

As noted above, in Count I of the petition the Objectors claim that the candidate's affidavit accompanying the Candidate's nomination petition contains a material defect in that it contains a false statement. The Objectors submit that the candidate's affidavit contains a false statement because the Candidate swore that he is eligible for the office of State Representative when he is not eligible for that office under Article 2, Section 5 of the Pennsylvania Constitution. In particular, the Objectors allege:

9. It is believed and therefore averred that the [Candidate] will not have been a resident of Pennsylvania for four years before the general election to be held on November 3, 1998, and that he was not a resident of Pennsylvania prior to absenting himself from Pennsylvania on any public business of the United States or of this State, to-wit, that he was born in Thailand, then moved to Massachusetts, then moved to New York, then moved to Texas, and did not establish residency in Pennsylvania before July 14, 1995.

Petition to Set Aside Nomination Petition, p. 3.

Initially, we note that challenges to a nomination petition must overcome the presumption of validity. *Williams.* As a result, the Objectors bear the heavy burden of demonstrating that the Candidate's nomination petition is invalid. *Cooper; Street.*

As previously stated, Article 2, Section 5 of the Pennsylvania Constitution provides, in pertinent part:

Senators shall be at least twenty-five years of age and Representatives twenty-one years of age. They shall have been citizens and inhabitants of the State four years, and inhabitants of their respective districts one year next before their election (unless absent on the public business of the United States or of this state)....

As the Pennsylvania Supreme Court has noted:

We have held that the term "inhabitant" or "resident," as stated in Article II, Section 5, "cannot mean one sojourning temporarily, or for some special purpose, but refers to one who has a permanent abode; the domicil of the senator, representative, governor or judge...."

*Prendergast,* 543 Pa. at 505–06, 673 A.2d at 327 (citations omitted). In addition, the four-year period of domicile contained in Article 2, Section 5 requires a candidate to be a Pennsylvania domiciliary for the four years immediately preceding the general election for the office he is seeking. *Id.; Lesker; Vidmer.* Thus, based on their petition, the Objectors are required to demonstrate that the Candidate was not a domiciliary of Pennsylvania for the four years preceding the general election to be held on November 3, 1998. *Prendergast; Cooper; Vidmer.*

The facts adduced at the hearing on the Objectors' petition may be summarized as follows. The Candidate was born in Thailand, and was raised in Everett, Massachusetts. In 1988, the Candidate entered the United States Military Academy at West Point, New York. While attending the Academy, he met his future wife who was a resident of Coraopolis, Allegheny County, Pennsylvania. On May 30, 1992, the Candidate graduated from the Academy. The Candidate stated that upon his graduation, he was required to serve an additional five years of active duty with the United States military.

On June 1, 1992, the Candidate and his wife were married in West Point, New York. The Candidate credibly testified that prior to their marriage, he and his wife had decided to reside near her parents in Moon Township, Allegheny, County, Pennsylvania. Accordingly, after his graduation and their marriage, the Candidate and his wife moved in with her parents. The Candidate registered his vehicle with the Pennsylvania Depart-

ment of Transportation, and obtained car insurance listing his in-laws' address as his own.

On August 1, 1992, the Candidate and his wife signed a six-month lease on an apartment in Coraopolis, Pennsylvania that was to expire on January 31, 1993. However, in November of 1992, the Candidate was called up for active duty, and was sent to the military base at Fort Hood, Texas. The Candidate credibly testified that because no housing was available in the base at that time, he was required to obtain an apartment off base in Killeen, Texas for a couple months. The Candidate's wife left Coraopolis and joined him in Texas. While residing at this address, the Candidate applied for a Texas driver's license,[15] and both he and his wife registered to vote.

By early December of 1992, the Candidate had obtained housing on the base and both he and his wife moved to Fort Hood. While at the Fort Hood address, the Candidate obtained a duplicate Texas driver's license, and both he and his wife again registered to vote.[16] In addition, his wife enrolled as a student at Central Texas College listing the Fort Hood address as her local address, and listing her parents' address in Moon Township as her permanent address.

The Candidate credibly testified that although he was stationed in Texas at that time, he and his wife always intended to return to Western Pennsylvania and raise their family here when he completed his service in the military. He also credibly testified that in the Spring of 1994, he applied for entry into an early release/retirement program whereby he could satisfy his active duty commitment with the Army through an assignment to the Reserves. He indicated that he applied for an assignment with a unit located in Brookville, Pennsylvania. On September 20, 1994, the Army accepted the Candidate's application for entry

into the program, and indicated that he would be assigned to the unit in Brookville.

Subsequently, the Army issued a Certificate of Release or Discharge from Active Duty that indicated the Candidate was honorably discharged from the Army effective May 30, 1995. The certificate indicated that the Candidate supplied an address in Moon Township as his mailing address after separation from the Army. It also indicated that the Candidate had requested that a copy of the certificate be sent to the Pennsylvania Director of Veterans Affairs. The Candidate credibly testified that he and his wife have resided in Moon Township since his acceptance into this program.

The Objectors contend that the evidence shows that the Candidate does not meet the residency requirements of Article 2, Section 5 because he did not become a Pennsylvania domiciliary until his return to Pennsylvania in 1995. In particular, the Objectors argue that even if the Candidate established a Pennsylvania domicile in June of 1992, the actions taken by him and his wife while he was stationed in Texas demonstrate that they became domiciliaries of that state. The Objectors submit that, as a result, the Candidate has not been a Pennsylvania domiciliary for the four years preceding the November 3, 1998 general election as required by Article 2, Section 5. We do not agree.

As the Pennsylvania Supreme Court has noted:

> A domicile is the place at which an individual has fixed his family home and principal establishment for an indefinite period of time. *Dorrance's Estate*, 309 Pa. 151, 163 A. 303 (1932). A domicile once acquired is presumed to continue until it is shown to have been changed and where a change is alleged, the burden of proving it rests upon whoever makes the allegation. *Id.* A new domicile can be acquired only by physical presence at a new residence plus intent to make that new residence the

---

15. The exhibits introduced at the hearing indicate that the Candidate surrendered a Massachusetts driver's license to the Texas authorities when he submitted his application. The exhibits also indicate that he surrendered his Texas driver's license when he applied for a Pennsylvania license on February 17, 1996.

16. On the voter registration forms introduced into evidence, both the Candidate and his wife certified that they were United States citizens and residents of Bell County, Texas.

principal home. *Id.* Intent is the actual state of facts, not what one declares them to be. An established domicile, however, can be retained without physical presence or residence until it be proven that a new domicile has been acquired.

*Prendergast,* 543 Pa. at 506, 673 A.2d at 327–28.

■ In addition, as the Pennsylvania Superior Court has stated:

The terms domicile and residence are not interchangeable; whereas residence is a physical fact, domicile is a matter of intention. Except where permitted to live off-base, people in the military have no choice in where they reside, hence in domicile. Therefore, a service person's domicile is presumed not to change from that person's domicile at the time of enlistment.

*Bernhard v. Bernhard,* 447 Pa. Superior Ct. 118, 127, 668 A.2d 546, 550 (1995). However, military personnel may acquire a new domicile if circumstances show an intent to abandon the original and adopt a new domicile. *Milam v. Milam,* 450 Pa. Superior Ct. 597, 677 A.2d 1207 (1996), *petition for allowance of appeal denied,* 547 Pa. 729, 689 A.2d 234 (1997). *See also Nixon v. Nixon,* 329 Pa. 256, 268, 198 A. 154, 160–61 (1938) ("It cannot be doubted that the performance of duties by an army officer in the national defense justifies absence from the state where residence is claimed.... It would be most unwise to hold that if a citizen enters into a government service that has no fixed place of employment, he is to be deprived of his rights as a civilian under the laws of the state of his origin").

■ Applying the foregoing law to the instant matter, we find that the Objectors have not met their burden of demonstrating that the Candidate does not meet the residency requirements of Article 2, Section 5. In June of 1992, after marrying his wife, the Candidate moved to Pennsylvania. They set up a home in Coraopolis until he was ordered by the Army to move to Texas. It must be conceded that, while in Texas, the Candidate and his wife certified that they were residents of Bell County, Texas when they registered to vote. Indeed, it is beyond argument that at that time both the Candidate and his wife resided in Texas. However, they were compelled to reside in Texas under orders issued by the military authorities.[17]

Both the Candidate and his wife testified that they considered Western Pennsylvania to be their permanent home and they desired to raise their children there. Of course, these statements of their subjective intent, taken alone, are not sufficient. *Prendergast.* However, they are strongly corroborated by other evidence that was presented in this case. When registering for school while in Texas, the Candidate's wife listed her par-

---

**17.** We must acknowledge the provisions of section 704(h) of the Election Code, relating to the qualifications of electors, which states that "[i]f a person goes into another state and while there exercises that right of a citizen by voting, he shall be considered to have lost his residence in this State." 25 P.S. § 2814(h). However, we believe that if an individual is **required** to reside in another jurisdiction by forces beyond his control, the mere fact that he exercises his right of franchise while compelled to be in that jurisdiction does not, **in and of itself,** constitute a change of domicile. *See, e.g., Lesker* wherein the Pennsylvania Supreme Court stated, in pertinent part:

In the famous case of [*Dorrance's Estate*], the question arose as to whether John T. Dorrance, whose estate was the subject of appraisement for transfer inheritance tax purposes, was prior to his death domiciled in Pennsylvania or New Jersey, since he maintained an abode in each state. Having been advised by his attorney that domicile " 'was largely a matter of intention' ", Dorrance made

it a point to declare orally and in writing that he was a resident of New Jersey. He even went so far as to execute an agreement with his wife that their residence should remain at their estate ... in New Jersey, even though in point of fact they spent most of their time at their estate ... in Pennsylvania. They also agreed that they would vote in New Jersey and not in Pennsylvania. For tax purposes it was to Dorrance's advantage to have his domicile in New Jersey.

This Court, however, in a learned and exhaustive opinion by Chief Justice Frazier, held that these expressions of intention on the part of Dorrance could not override the facts that he was actually domiciled ... in Pennsylvania. *Id.,* 377 Pa. at 416–17, 105 A.2d at 379. Thus, the mere fact that the Candidate or his wife voted in Texas cannot, standing alone, compel this court to determine that they were domiciliaries of Texas. This fact must be considered in conjunction with the other facts of record in making such a determination. *Prendergast; Lesker; Dorrance's Estate.*

ents' home address as her permanent address. There is no indication that she sought reduced in-state tuition rates afforded citizens of Texas.[18]

 Most telling of the evidence presented, however, is the Candidate's application for, and acceptance into, the early release/retirement program from his active duty commitment with the Army. By obtaining an assignment with the Reserves to the unit in Brookville, the Candidate and his wife were able to return to Western Pennsylvania. It is apparent that the Candidate took steps to return here even before his active duty service with the Army was satisfied. More importantly, however, by obtaining the assignment with the Reserves, the Candidate actually increased the overall term that he was required to serve in the military. Thus, the Candidate actually increased the time that he was committed to serve in the military for the opportunity to return to Western Pennsylvania. Such an active manifestation of his intention that Pennsylvania is his domicile outweighs any evidence to the contrary.

It is clear, then, that the Candidate and his wife established domicile in Pennsylvania when they moved here after marrying at West Point in June of 1992, and it continued through his assignment to Fort Hood, Texas. The evidence introduced at the hearing supports the conclusion that the Candidate meets the requirements of Article 2, Section 5 that he be a "citizen[ ] and inhabitant[ ] of the State four years, and inhabitant[ ] of [his] respective district[ ] one year next before [his] election (unless absent on the public business of the United States or of this State)". Pa. Const. art. II, § 5.[19] Because the Candidate meets this requirement, he did not falsely state that he is eligible for the office of State Representative in his candidate's affidavit. As a result, the Candidate's nomination petition does not contain a material error or defect, and should not be set aside.

Accordingly, the Objectors' petition to set aside the Candidate's nomination petition is denied.

## ORDER

AND NOW, this 7th day of April, 1998, following hearing on the petition to set aside nomination petition in the above-captioned matter, said petition is DENIED.

The Secretary of the Commonwealth is directed to certify the name of John R. Pippy as for inclusion on the ballot for the May, 1998 primary election as Republican candidate for Representative of the 44th Legislative District in the General Assembly.

The Chief Clerk is directed to notify forthwith the parties hereto and their counsel, and also to certify a copy thereof to the Secretary of the Commonwealth.

Each party to bear his own costs.

---

**18.** *Compare, e.g., Prendergast* and *Vidmer* wherein the candidates qualified for, and availed themselves of, reduced tuition rates reserved only for citizens of the foreign jurisdictions.

**19.** It cannot be successfully argued that the Candidate's active service in the military does not constitute "the public business of the United

States" as that phrase is used in Article 2, Section 5. *See, e.g., Nixon,* 329 Pa. at 268, 198 A. at 160 ("It cannot be doubted that the performance of duties by an army officer in the national defense justifies absence from the state where residence is claimed").