# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of : 
Neil Makhija for the Democratic : 
Nomination for Representative : 
in the General Assembly from the : 
122nd Legislative District in the : 
Democratic Primary of April 26, 2016 : No. 108 M.D. 2016
: Heard: March 11, 2016

Petition of: Bryan Price and Michael : 
Spairana, Jr. :


BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge


OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: March 17, 2016


Bryan Price and Michael Spairana (Objectors) have petitioned to set aside the nomination petition of Neil Makhija (Candidate), who is scheduled to appear on the ballot in the primary election of April 26, 2016, as a Democratic Party candidate for Representative of the 122nd Legislative District in the Pennsylvania General Assembly. Objectors contend that the Candidate's Affidavit contains a materially false statement that renders Candidate's nomination petition null and void. Specifically, Objectors contend that Candidate's statement that he is eligible to serve in the General Assembly is not true because he became a Massachusetts resident during his term of study at Harvard Law School. As a result, Objectors argue that Candidate does not meet the Pennsylvania residency requirements for a state representative set forth in the Pennsylvania Constitution.

**Background**

On March 11, 2016, the Court conducted an evidentiary hearing on Objectors' petition. Both Objectors and Candidate offered, and had admitted, exhibits to support their respective positions on whether Candidate's actions during law school effected a change in his domicile from Pennsylvania to Massachusetts. Candidate was the sole witness for both parties.

In response to questioning by Objectors, Candidate readily acknowledged that he voted in Massachusetts on November 6, 2012, and November 4, 2014. He also testified that he obtained a Massachusetts driver's license, registered his vehicle in Massachusetts and filed a state income tax return there in 2013 and 2014.

On direct examination, Candidate testified that he never abandoned his Pennsylvania domicile. He was born and raised in Carbon County, where his father has practiced medicine for over 30 years after immigrating to the United States from India. Candidate left Pennsylvania for his undergraduate education at Sarah Lawrence College in New York and later for his legal education at Harvard University in Massachusetts. Upon receiving his J.D. in 2015, Candidate immediately returned to Pennsylvania.

Candidate explained that in 2008, while a student at Sarah Lawrence College, he voted in Pennsylvania by absentee ballot. In 2009, he received his B.A. and began a position in the federal government as a White House Fellow. In 2010, he worked for Joseph Sestak, the Democratic Party candidate for Pennsylvania's seat in the United States Senate. While campaigning for Sestak in 2010, Candidate applied for an absentee ballot but never received it. As a result,

he was forced to drive to the Carbon County Courthouse to obtain the absentee ballot and vote.

After Mr. Sestak lost the election in November 2010, Candidate began working for United States Senator Kirsten Gillibrand in her New York office. Candidate informed the Senator that his tenure would be short because he planned to enter law school.

In August 2012, Candidate entered Harvard Law School, renting an apartment in Cambridge. Candidate explained that his decision to vote in Massachusetts was prompted by his unsuccessful attempt in 2010 to procure an absentee ballot.[1] Candidate obtained a Massachusetts driver's license because he needed to register his vehicle in Massachusetts in order to obtain a Cambridge resident parking permit.[2] He filed state income tax returns in Massachusetts because anyone present in Massachusetts for more than 183 days must file a return there. Candidate never worked in Massachusetts. His summer law school positions in 2013 and 2014 were located in New York City.[3]

Candidate testified that it was always his intent to return to Pennsylvania. Notably, while at Harvard Law School, he received a scholarship

---

[1] Candidate notes that the Pennsylvania Department of State website states that college students have the choice of voting at their home address or at their school address. http://votespa.com/portal/server.pt?open=514&objID=1174122&mode=2 (last visited March 17, 2016). *See also* Exhibit R-1.

[2] Candidate submitted the resident parking permit requirements for Cambridge, Massachusetts. Exhibit R-7. It states that to be able to park in a residential "Permit Parking Only" location, one's vehicle must be registered in Massachusetts with a Cambridge address.

[3] In 2013, Candidate worked for the U.S. Attorney's Office for the Southern District of New York, and in 2014 he was employed as a summer associate at Arnold & Porter LLP. Candidate testified that he was offered a position at Arnold & Porter upon graduation, but he did not accept it because he wanted to return to Carbon County.

available only to residents of Carbon County.[4]   Candidate did not qualify for Massachusetts in-state tuition because Massachusetts will not qualify an individual "for resident status if your only reason for living in Massachusetts during [the qualifying period] was to attend school here."  Exhibit R-10.  Candidate offered several documents showing that he listed his Carbon County address as his "home" while he attended law school.[5]

Following his graduation in 2015, Candidate returned to Carbon County and took the Pennsylvania Bar Examination, which is the only state bar examination that he took.  Upon receiving his law license, Candidate set up a private law office in Carbon County, where he continues to practice law.

## Applicable Law

Eligibility to serve as a Representative in the General Assembly is governed by Article II, Section 5 of the Pennsylvania Constitution.  It states as follows:

> Senators shall be at least twenty-five years of age and Representatives twenty-one years of age. *They shall have been citizens and inhabitants of the State four years*, and inhabitants of their respective districts one year next before their election (unless absent on the public business of the United States or of this State), and shall reside in their respective districts during their terms of service.

---

[4] A copy of his scholarship award for 2013-14 was submitted into evidence.  Exhibit R-4.

[5] Candidate submitted the following items: a travel insurance confirmation dated March 17, 2013, listing his Carbon County address, Exhibit R-2; a receipt for software he purchased in law school on May 15, 2013, billed to his Carbon County address, Exhibit R-3; a travel insurance confirmation issued November 29, 2014, listing his Carbon County address, Exhibit R-5; and numerous Instagram pictures and comments from Candidate referencing his "home" in Carbon County dated 2012 through 2015, Exhibit R-6.

4

PA. CONST. art. II §5 (emphasis added).  The meaning of Article II, Section 5 has been addressed in several appellate court decisions.  Although none is precisely on point with the facts of this case, this case law points the way.

The precedent begins with *In re Lesker,* 105 A.2d 376 (Pa. 1954), in which the Pennsylvania Supreme Court discoursed at some length on the residency requirement in Article II, Section 5.  *Lesker* involved a challenge to the eligibility of a candidate seeking the Democratic Party nomination for state representative. The objectors contended that the candidate's address on his nomination petition was false because the candidate was actually living at a different address with a woman to whom he was not married.  Acknowledging the challenge of construing "citizen" and "inhabitant" as used in Article II, Section 5, the Supreme Court explained that

> [i]t seems impossible to restrict the terms habitation, residence and domicile to airtight, waterproof compartments. Their meanings seem bound to escape their lexicographical boundaries and mingle with the others since a person's place of *residence* may be identical with his *domicile,* and *habitation* is always a component part of *residence* and *domicile.* However, in strict technical terminology a *habitation* may be defined as an abode for the moment, *residence* a tarrying place for some specific purpose of business or pleasure, and *domicile* the fixed, permanent, final home to which one always intends to return. A person's civil status is determined by his domicile. Thus, a business man may have his family home in the suburbs of a city where he lives with his wife and children. No matter where he travels nor how long he remains away, he always returns to this abode. This is his domicile. For business reasons he may have a residence in the city, even living there for many months of the year. This residence can never become the basis for voting or for candidacy for office. If traveling, he may stay at a hotel, boarding or rooming house. This would be his habitation and, regardless of expression of intention, could never become his legal domicile.

*Lesker*, 105 A.2d at 380 (emphasis in original). The Supreme Court concluded that "[t]o accomplish a change of domicile there must be not only the *animus* to change but the *factum* as well. There must be an actual transfer of bodily presence from one place to the other." *Id.* Ultimately, the

> [o]ne almost conclusive criterion of domicile is the *animus manendi*. There must be the intention to *remain*.

*Id.* (emphasis in original).

Because the objectors in *Lesker* failed to establish that the candidate "moved bag and baggage" to a new address, the Supreme Court held that they did not prove that the candidate had changed his domicile. It upheld the decision of the lower court to dismiss the objectors' petition.

*In re Nomination Petition of Vidmer,* 442 A.2d 1203 (Pa. Cmwlth.), *aff'd without opinion,* 444 A.2d 100 (Pa. 1982), involved a candidate seeking the Democratic Party nomination for state representative. To be eligible, the candidate had to be domiciled in Pennsylvania as of November 1, 1978. The objectors presented evidence that the candidate enrolled at the University of Michigan in 1963. Thereafter, in 1968, the candidate took steps to receive the reduced tuition of an in-state resident. Specifically,

> in order to qualify as a Michigan resident to obtain a lower tuition fee, [the candidate] dropped out of school, took up a residence in Michigan and worked for the required period of time *to qualify as a permanent resident of that state*.

*Id*. at 1205 (emphasis added). The candidate also voted "as a Michigan resident in the 1976 and 1978 elections." *Id.* at 1206. After graduation, the candidate moved to Virginia, where he worked. In 1979, the candidate registered to vote in Pennsylvania but continued to work in Virginia. The candidate testified that in

6

spite of his peregrinations, he considered Pennsylvania his home and expected to return.

This Court concluded that the candidate did not begin his Pennsylvania residency until 1981. In doing so, the Court focused on the candidate's significant effort to establish permanent residency in Michigan:

> *Were it not for [the candidate's] action in 1968 when he clearly disassociated himself from his parents' home in Pennsylvania* in order to establish himself as a permanent resident in Michigan, we would be constrained to hold that Petitioners had not met their burden in this case to establish that [the candidate] was not an inhabitant and citizen of Pennsylvania in November of 1978. Given that change of domicile, however, and the subsequent events in [the candidate's] life to which he candidly testified, it is clear to us that he did not physically relocate in Pennsylvania until 1981.

*Id.* (emphasis added). The holding turned on the candidate's decisive, year-long effort to become a "permanent Michigan resident," not on his votes in Michigan.

The next significant ruling was *In re Prendergast*, 673 A.2d 324 (Pa. 1996). In that case, the candidate sought to appear on the primary election ballot as a Democratic Party candidate for state representative. The candidate was born in Pennsylvania in 1963, where she lived until 1990 when she moved to Arlington, Virginia to attend law school. While in law school, she obtained a Virginia driver's license; registered her vehicle in Virginia; paid reduced tuition available only to Virginia residents; and voted in Virginia. In 1994, the candidate graduated, returned to Pennsylvania, registered to vote and took the Pennsylvania Bar Examination. It was the only bar examination for which she sat.

The objector argued that the candidate was not eligible for office in the 1996 election because she did not satisfy Pennsylvania's four-year residency

requirement. In removing the candidate from the ballot, this Court focused on the fact that she had voted in Virginia. The Court pointed to the Pennsylvania Election Code,[6] which establishes the criteria for an elector in Pennsylvania. Section 704(h) of the Election Code states:

> If a person goes into another state and while there exercises the right of a citizen by voting, he shall be considered to have lost his residence in this State.

25 P.S. §2814(h).

The candidate appealed, and the Supreme Court affirmed. It explained its holding as follows:

> A domicile is the place at which an individual has fixed his family home and principal establishment for an indefinite period of time. A domicile once acquired is presumed to continue until it is shown to have been changed and where a change is alleged, the burden of proving it rests upon whoever makes the allegation. *A new domicile can be acquired only by physical presence at a new residence plus intent to make that new residence the principal home*. Intent is the actual state of facts, not what one declares them to be. An established domicile, however, can be retained without physical presence or residence until it be proven that a new domicile has been acquired.
>
> Applying the established law to the instant case, we find that [the objector] met his burden of demonstrating that [the candidate] established a new domicile in Virginia. [*The candidate*] *registered her vehicle in that state, she registered to vote there, and, most importantly, she voted as a Virginia citizen in several elections*. As noted by the Commonwealth Court, Section 704(h) of the Pennsylvania Election Code, Act of June 3, 1937, *as amended,* 25 P.S. § 2814(h), provides that, "if a person goes into another state and while there exercises

---

[6] Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§2600-3591.

that right of a citizen by voting, he shall be considered to have lost his residence in this State." Moreover, like the candidate in [*In re Nomination Petition of Vidmer*, 442 A.2d 1203 (Pa. Cmwlth), *affirmed without opinion*, 444 A.2d 100 (Pa. 1982)] [*the candidate*] *qualified for the reduced tuition granted only to citizens of Virginia.*

*Prendergast*, 673 A.2d at 327-28 (internal citations and footnote omitted) (emphasis added). Acknowledging the candidate's immediate return to Pennsylvania after graduation, the Supreme Court nevertheless concluded that she had taken the actions of a person intending to move her domicile to Virginia.

The most recent precedent on the constitutional residency requirement is this Court's decision in *In re Nomination of Pippy*, 711 A.2d 1048 (Pa. Cmwlth.), *aff'd without opinion*, 709 A.2d 905 (Pa. 1998). In *Pippy*, the candidate sought the Republican Party's nomination for state representative. The objectors contended that the candidate was not eligible because he had not resided in Pennsylvania for four years preceding the November 3, 1998, election. This Court made the following factual findings:

> The Candidate was born in Thailand, and was raised in Everett, Massachusetts. In 1988, the Candidate entered the United States Military Academy at West Point, New York. While attending the Academy, he met his future wife who was a resident of Coraopolis, Allegheny County, Pennsylvania. On May 30, 1992, the Candidate graduated from the Academy. The Candidate stated that upon his graduation, he was required to serve an additional five years of active duty with the United States military.
>
> On June 1, 1992, the Candidate and his wife were married in West Point, New York. The Candidate credibly testified that prior to their marriage, he and his wife had decided to reside near her parents in Moon Township, Allegheny, County, Pennsylvania. Accordingly, after his graduation and their marriage, the Candidate and his wife moved in with her parents. The Candidate registered his vehicle with the Pennsylvania

9

Department of Transportation, and obtained car insurance listing his in-laws' address as his own.

On August 1, 1992, the Candidate and his wife signed a six-month lease on an apartment in Coraopolis, Pennsylvania that was to expire on January 31, 1993. However, in November of 1992, the Candidate was called up for active duty, and was sent to the military base at Fort Hood, Texas. The Candidate credibly testified that because no housing was available in the base at that time, he was required to obtain an apartment off base in Killeen, Texas for a couple months. The Candidate's wife left Coraopolis and joined him in Texas. While residing at this address, the Candidate applied for a Texas driver's license, and both he and his wife registered to vote.

By early December of 1992, the Candidate had obtained housing on the base and both he and his wife moved to Fort Hood. While at the Fort Hood address, the Candidate obtained a duplicate Texas driver's license, and both he and his wife again registered to vote. In addition, his wife enrolled as a student at Central Texas College listing the Fort Hood address as her local address, and listing her parents' address in Moon Township as her permanent address.

The Candidate credibly testified that although he was stationed in Texas at that time, he and his wife always intended to return to Western Pennsylvania and raise their family here when he completed his service in the military. He also credibly testified that in the Spring of 1994, he applied for entry into an early release/retirement program whereby he could satisfy his active duty commitment with the Army through an assignment to the Reserves. He indicated that he applied for an assignment with a unit located in Brookville, Pennsylvania. On September 20, 1994, the Army accepted the Candidate's application for entry into the program, and indicated that he would be assigned to the unit in Brookville.

Subsequently, the Army issued a Certificate of Release or Discharge from Active Duty that indicated the Candidate was honorably discharged from the Army effective May 30, 1995. The certificate indicated that the Candidate supplied an address in Moon Township as his mailing address after separation from the Army. It also indicated that the Candidate had requested that a copy of the certificate be sent to the Pennsylvania

10

Director of Veterans Affairs. The Candidate credibly testified that he and his wife have resided in Moon Township since his acceptance into this program.

*Id.* at 1057-58 (internal footnotes omitted).

This Court concluded that the objectors did not meet their burden of proving that the candidate had established residence in Texas. The candidate moved to Texas because he was "under orders issued by the military authorities." *Id.* at 1059. Indeed, domicile for military personnel is presumed not to change after enlistment. *Id.* (quoting *Bernhard v. Bernhard*, 668 A.2d 546, 550 (Pa. Super. 1995)). This Court did not find the candidate's vote in Texas dispositive, explaining

> that if an individual is required to reside in another jurisdiction by forces beyond his control, the mere fact that he exercises his right of franchise while compelled to be in that jurisdiction does not, in and of itself, constitute a change of domicile.

*Id*. at 1059 n.17 (emphasis omitted). Further, there was no evidence that the candidate's wife, who was attending college in Texas, received the reduced tuition available to Texas residents. Acknowledging *Prendergast*, this Court concluded:

> *[T]he mere fact that the [c]andidate or his wife voted in Texas cannot, standing alone, compel this court to determine that they were domiciliaries of Texas. This fact must be considered in conjunction with the other facts of record in making such a determination.*

*Pippy*, 711 A.2d at 1059 n.17 (emphasis added).

### Objectors' Contentions

Objectors argue that the Supreme Court's ruling in *Prendergast* is dispositive because the facts here are nearly identical to those in *Prendergast*. The candidate in *Prendergast* was a Pennsylvanian who moved to another state to

11

attend law school and while there voted, paid taxes, registered a vehicle under the laws of that state and paid the reduced tuition available only to state residents. The only difference here is that Candidate did not pay a Massachusetts tuition rate because Harvard Law School is a private institution. The Massachusetts voter registration form contains a recital that the signatory acknowledges that Massachusetts is "home." Thus, by signing this form, Candidate took decisive action to abandon his Pennsylvania domicile. Voting in Massachusetts, according to Objectors, was the tipping point. They rely upon the Supreme Court's reference to Section 704(h) of the Election Code and description of Candidate Prendergast's votes in Virginia as the "most important[ ]" factor. *Prendergast*, 673 A.2d at 328.

Candidate responds that *Lesker*, 105 A.2d 376, established the foundational principles for determining whether a candidate has been a Pennsylvania citizen and inhabitant for the four years preceding the general election date. He disagrees that voting is the key factor in determining residency. Candidate notes that in *Vidmer*, 442 A.2d 1203, it was not the candidate's vote in Michigan that caused his removal from the ballot but, rather, the decisive actions that the candidate took to establish a Michigan domicile, *i.e.*, dropping out of school and working for one year in Michigan. In *Prendergast*, the Supreme Court cited *Vidmer* with approval; it neither distinguished nor overruled *Vidmer*. Further, it was the combination of many factors that resulted in the Supreme Court's removal of Candidate Prendergast from the ballot, not solely her votes in Virginia. The Supreme Court referred to Section 704(h) of the Election Code and used the modifier "most importantly." However, those two words cannot be read to mean that voting was more important than taking the steps necessary to qualify for in-state tuition, as had occurred in *Vidmer*. Lest there be any doubt, in *Pippy*, 711

12

A.2d 1048, which was affirmed by the Supreme Court, this Court refused to remove a candidate from the ballot even though he and his wife voted in Texas. Instead, this Court emphasized the decision of the candidate's wife not to seek Texas residency for in-state tuition and her use of her family's Pennsylvania address on school documents. Likewise, here, Candidate continued to use his family's home address in Carbon County for several purposes while in law school. Not only would Candidate not qualify for Massachusetts in-state tuition, he had to be a Carbon County resident to qualify for his scholarship to Harvard Law School.

## Analysis

A nomination petition is presumed valid; thus, "challenges to a nomination petition must overcome the presumption of validity." *Pippy*, 711 A.2d at 1057. Accordingly, Objectors bear "the heavy burden" of demonstrating that the Candidate's nomination petition is invalid. *Id*. That burden requires proof that Candidate acquired a new domicile in Massachusetts while attending law school. As the Supreme Court has explained,

> [a] domicile is the place at which an individual has fixed his family home and principal establishment for an indefinite period of time. *A domicile once acquired is presumed to continue until it is shown to have been changed and where a change is alleged, the burden of proving it rests upon whoever makes the allegation.* A new domicile can be acquired only by physical presence at a new residence plus intent to make that new residence the principal home. Intent is the actual state of facts, not what one declares them to be. An established domicile, however, can be retained without physical presence or residence until it be proven that a new domicile has been acquired.

*Prendergast*, 673 A.2d at 327-28 (internal citations omitted) (emphasis added). Further, "the term 'inhabitant' or 'resident' as stated in Article II, Section 5,

13

'cannot mean one sojourning temporarily, or for some special purpose, but refers to one who has a permanent abode ....'" *Prendergast*, 673 A.2d at 327 (quoting *Lesker*, 105 A.2d at 376).

Objectors emphasize Section 704 of the Election Code, which establishes rules for determining residence "of a person desiring to register or vote." 25 P.S. §2814. Section 704(h) provides that a person who votes in "another state ... shall be considered to have lost his residence in this State." 25 P.S. §2814(h). Candidate notes, in response, that Section 703 of the Election Code provides that "no person shall be deemed to have ... lost [his residence] by reason of his absence ... while a student of any institution of learning ...." 25 P.S. §2813. Sections 703 and 704 are of limited value to a resolution of this case.

First, the purpose of Section 704 is to determine who can vote in Pennsylvania. It does not determine candidate eligibility, which is a matter committed to the Pennsylvania Constitution. Simply, Section 704(h) makes it clear that a person who votes in Massachusetts cannot also vote in Pennsylvania. Indeed, no person may lawfully vote in two elections held on the same day.

Second, although the Supreme Court in *Prendergast* referred to Section 704(h), it did not make it dispositive of the residency requirement in Article II, Section 5. At best it found Section 704(h) of the Election Code instructive. *Prendergast* did not make voting in another state the *sine qua non* of abandoning a long time domicile in Pennsylvania.

Third, to the extent the Election Code speaks to the question of when domicile changes, it is ambiguous. This is because Section 703 states that a citizen's absence "while a student of any institution of learning" does not effect a change in residence. 25 P.S. §2813.

14

*Lesker* set forth the definitive and still extant principles for changing one's domicile:

> To accomplish a change of domicile there must be not only the *animus* to change but the *factum* as well. There must be an actual transfer of bodily presence from one place to the other. The *animus* and the *factum* do not need to be simultaneous, but until they coincide the change of domicile is not effected. In the law a domicile is as deep rooted as a tree and to transfer it from one location to another requires an operation as intensive as the digging up, loading, transportation, and replanting of an elm or maple.

*Lesker,* 105 A.2d. at 380. The question is whether Objectors' evidence has shown that Candidate demonstrated both the *animus* and *factum* needed to effect a change in domicile from Pennsylvania to Massachusetts. The Court concludes that the evidence is lacking.[7]

It is true that *Pippy* emphasized that Candidate Pippy was not in Texas by choice. Likewise, here, several of Candidate's "actions" were not by choice. He had to live where he went to school, and he needed to be able to park on the street by his apartment. Filing a tax return in Massachusetts and registering his vehicle in Massachusetts were not voluntary acts. His vote in Massachusetts was voluntary, but it appeared permissible under the law of both Massachusetts and Pennsylvania. That Candidate chose to vote in Massachusetts and not in Pennsylvania by absentee ballot did not demonstrate an intention to abandon his Pennsylvania domicile.[8]

---

[7] In reviewing the evidence, the Court finds Candidate credible in every respect.

[8] Candidate Pippy made the same choice. This Court found that he did not effect a change in his domicile from Pennsylvania to Texas by not voting in Pennsylvania by absentee ballot.

Candidate was drawn to Cambridge, Massachusetts by a prestigious law school. It was a logical decision to attend Harvard Law School given the current hard job market for new law school graduates. In that regard, the choice was "coerced" by economic reality.

Throughout his law school career, Candidate returned to Carbon County for holidays and family visits. He referred to Carbon County as "home" to others. He listed his parents' Carbon County address as his home address on a variety of forms for doctor visits, job applications and travel insurance. He maintained his bank accounts in Pennsylvania. He never worked in Massachusetts. After Candidate passed the Pennsylvania Bar Examination, he moved out of his parents' house to Jim Thorpe, Carbon County, where he began his law practice.

Objectors' evidence did not demonstrate the coincidence of *animus* and *factum* by which a person effects a change of domicile. *Lesker*, 105 A.2d at 380. Voting in another state while a student in that state does not, as contended by Objectors, demonstrate a coincidence of *animus* and *factum* for purposes of domicile.

## Conclusion

For these reasons, the petition of Objectors to set aside the nomination petition of Neil Makhija is denied.

_____
MARY HANNAH LEAVITT, President Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of :
Neil Makhija for the Democratic :
Nomination for Representative :
in the General Assembly from the :
122nd Legislative District in the :
Democratic Primary of April 26, 2016 : No. 108 M.D. 2016
:
Petition of: Bryan Price and Michael :
Spairana, Jr. :

# **O R D E R**

AND NOW, this 17th day of March, 2016, following hearing on the petition to set aside the nomination petition of Neil Makhija for the Democratic Nomination for Representative in the General Assembly from the 122nd Legislative District in the Democratic Primary of April 26, 2016, the petition is DENIED.

The Secretary of the Commonwealth is directed to certify the name of Neil Makhija for inclusion on the ballot for the office of Representative in the General Assembly from the 122nd Legislative District in the Democratic Primary of April 26, 2016.

The Chief Clerk is directed to send a copy of this order to the Secretary of the Commonwealth.

Each party to bear his own costs.

_____
MARY HANNAH LEAVITT, President Judge