IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of    :
Michael J. Stack, Candidate for    :
Lieutenant Governor    :   No. 162 M.D. 2018
   :   Heard: March 20, 2018
Petition of: Tracey L. Gordon, Ibrul    :
H. Chowdhury, and M. Karen Bojar    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge


OPINION
BY PRESIDENT JUDGE LEAVITT          FILED:  March 28, 2018

Tracy L. Gordon, Ibrul H. Chowdhury, and M. Karen Bojar (Objectors)[1] have petitioned to set aside the nomination petition of Michael J. Stack (Candidate), who seeks the Democratic Party nomination for Lieutenant Governor of Pennsylvania in the primary election scheduled for May 15, 2018.  Objectors contend that the affidavit filed with Candidate's nomination petition contains a materially false statement because it names his mother's home in Philadelphia County as his residence.  Objectors contend that Candidate, who currently serves as Pennsylvania's Lieutenant Governor, actually resides in Lebanon County, where the Lieutenant Governor's official residence is located.

## Background

On March 20, 2018, the Court conducted an evidentiary hearing on the factual question raised by Objectors' petition, which is the location of Candidate's residence in Pennsylvania.  Candidate and his chief of staff, Matthew Franchak, were

---

[1] Objectors are registered to vote in Pennsylvania as members of the Democratic Party.

the sole witnesses. The remaining evidence consisted of a factual stipulation and a series of exhibits that were admitted without objection. The largely undisputed facts are summarized as follows.

Following his inauguration as Lieutenant Governor on January 20, 2015, Candidate and his wife moved from their residence at 15132 Wayside Avenue in Philadelphia to the Commonwealth-owned official residence for the Lieutenant Governor located at Fort Indiantown Gap in Lebanon County. Shortly thereafter, Candidate's unoccupied Wayside Avenue home developed problems. The furnace failed, as did the hot water heater, which led to flooding. As a consequence, Candidate decided to sell his Wayside Avenue home, which he did on February 29, 2016. At that point, Candidate's chief of staff, Franchak, spoke to a Deputy Secretary at the Department of State about how long Candidate could maintain his voter registration at Wayside Avenue. Franchak told Candidate that the Deputy Secretary advised that he could continue to vote from the Wayside Avenue address for one year. Franchak also advised that "[a]fter the primary, they recommend that you register to vote at your mother's house. They supplied state statutes and court cases to back up these recommendations." Respondent Exhibit No. 9; Notes of Testimony, 3/20/18, at 73 (N.T. ___). Candidate's mother's home at 1247 Southampton Road is located in the same ward and division in Philadelphia as the Wayside Avenue property.

Since 2016, Candidate has identified 1247 Southampton Road as his residence for many purposes. These include Candidate's city, state and federal income tax filings; his voter registration; and his mailing address for personal financial matters, such as health insurance and his Senate pension. 1247

2

Southampton Road is the address identified on Candidate's driver's license. Since his inauguration in 2015, Candidate has paid wage taxes to the City of Philadelphia.

Candidate testified that most of his personal belongings, including his personal furniture, are at the official residence. Candidate has other furniture stored in a garage at 1247 Southampton Road. He keeps clothing both at the Southampton Road house and "down at the shore." N.T. 69. He spends some nights at 1247 Southampton Road, but not many. He testified that his position as Lieutenant Governor requires significant travel around the state, and during these trips he usually stays in a hotel. Most of Candidate's work is done in Harrisburg. He chairs sessions of the Pennsylvania Senate and chairs the Board of Pardons; his official office is in the State Capitol. Accordingly, he sleeps most nights in the official residence in Lebanon County.

Candidate testified that he intends to return to 1247 Southampton Road in Northeast Philadelphia when his term expires, either at the end of this year or in four years. He explained that he lived in the family house for decades, beginning at age 14. After he married, he bought a house on Wayside Avenue very close to 1247 Southampton Road. Candidate considers his occupancy of the Lieutenant Governor's official residence to be temporary and part of his service in that office. At no point has he considered or taken steps to make the official residence in Lebanon County his domicile.

Objectors contend that Candidate has listed his mother's address on his nomination petition and affidavit so that he will be identified on the primary election ballot as a resident of Philadelphia. This designation served him well in the 2014 Democratic primary, when he was the only Philadelphian on the ballot for Lieutenant Governor. In support, Objectors produced an exhibit showing the

primary election results from 2014 by county. As the sole candidate from Philadelphia, Candidate received 83.21% of the Philadelphia vote.

**Election Code**

Section 910 of the Pennsylvania Election Code (Election Code)[2] requires each candidate for any State office to file "with his nomination petition his affidavit" that identifies, *inter alia*, "his residence with street and number…." 25 P.S. §2870.[3] Although the Election Code does not have specific standards for determining the "residence" of a candidate, it does provide this guidance for "a person desiring to register or vote" in Pennsylvania. Section 704 of the Election Code states that for voting purposes, a person's "residence" is determined as follows:

> (a) That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning.
>
> (b) A person shall not be considered to have lost his residence who leaves his home and goes into another state or another election district of this State for temporary purposes only, with the intention of returning.

---

[2] Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§2600-3591.

[3] It provides, in relevant part:

> Each candidate for any State, county, city, borough, incorporated town, township, ward, school district, poor district, election district, party office, party delegate or alternate, or for the office of United States Senator or Representative in Congress, shall file with his nomination petition his affidavit stating--(a) *his residence, with street and number, if any, and his post-office address*; (b) his election district, giving city, borough, town or township; (c) the name of the office for which he consents to be a candidate; (d) that he is eligible for such office; (e) that he will not knowingly violate any provision of this act, or of any law regulating and limiting nomination and election expenses and prohibiting corrupt practices in connection therewith[.]

25 P.S. §2870 (emphasis added). The Department of State, Bureau of Elections has promulgated a "Candidate's Affidavit" form for use by candidates.

4

(c) A person shall not be considered to have gained a residence in any election district of this State into which he comes for temporary purposes only, without the intention of making such election district his permanent place of abode.

(d) The place where the family of a married man or woman resides shall be considered and held to be his or her place of residence, except where the husband and wife have actually separated and live apart, in which case the place where he or she has resided for two months or more shall be considered and held to be his or her place of residence.

(e) If a person removes to another state with the intention of making such state his permanent residence, he shall be considered to have lost his residence in this State.

(f) If a person removes to another state with the intention of remaining there an indefinite time and making such state his place of residence, he shall be considered to have lost his residence in this State, notwithstanding he may entertain an intention to return at some indefinite future period.

(g) If a person removes to the District of Columbia or other Federal territory or foreign country to engage in the government service, he shall not be considered to have lost his residence in this State during the period of such service, and the place where the person resided at the time of his removal shall be considered and held to be his place of residence.

(h) If a person goes into another state and while there exercises the right of a citizen by voting, he shall be considered to have lost his residence in this State.

25 P.S. §2814. In *In re Nomination Petition of Driscoll*, 847 A.2d 44 (Pa. 2004), our Supreme Court used the multi-part test in Section 704 to determine whether a candidate had correctly identified his residence on his nomination petition and affidavit.

Section 703 of the Election Code addresses how a registered voter may acquire, or lose, his residence in Pennsylvania. It states:

5

> For the purpose of registration and voting, *no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while employed in the service, either civil or military, of this State or of the United States*, nor while engaged in the navigation of the waters of the State or of the United States, or on the high seas, nor while a student of any institution of learning, nor while kept in any poorhouse or other asylum at public expense, nor while confined in public prison, except that any veteran who resides in a home for disabled and indigent soldiers and sailors, operated and maintained by the Commonwealth of Pennsylvania, and who possesses all the qualifications for voting, may gain a residence for registration and voting at the home for disabled and indigent soldiers and sailors. The provisions of this amendment shall not be construed to affect the voting rights of bedridden or hospitalized veterans who choose to vote as absentee electors by the use of veteran's official ballots.

25 P.S. §2813 (emphasis added). Candidate asserts that he is in "the service … of this State" and has not "gained a residence" in Lebanon County by virtue of his occupancy of the Lieutenant Governor's official residence. *Id*.

In reviewing objections to a nomination petition, the Court liberally construes the above-listed provisions of the Election Code "so as not to deprive an individual of the right to run for office or the voters of their right to elect a candidate of their choice." *In re Creighton*, 899 A.2d 1166, 1168 (Pa. Cmwlth. 2006). Further, "nomination petitions are presumed to be valid and an objector has the burden of proving that a nomination petition is invalid." *In re Driscoll*, 847 A.2d at 49. On the other hand, inaccuracies in a candidate's affidavit may not be dismissed as mere technical formalities. *Id.* at 50 (sworn affidavits "insure the legitimacy of information crucial to the election process[.]"). In *In re Nomination Petitions of McIntyre*, 778 A.2d 746, 754 (Pa. Cmwlth. 2001), this Court held that

> filing an affidavit, with the intent to deceive, that lists an address, which is not the candidate's residence, is more than a technical

6

violation of the Pennsylvania Election Code.  It is a material defect because when the affidavit was taken the facts sworn to were not true.

Thus, the Court held that the candidate's affidavit could not be amended and set aside the candidate's nomination petition. *Id.*

## Pennsylvania Constitution

A residency controversy generally arises in the context of a candidate's eligibility to serve under the Pennsylvania Constitution.  For example, *In re Lesker*, 105 A.2d 376 (Pa. 1954), concerned whether the candidate, who sought to serve as a representative in the General Assembly, resided in the legislative district that he sought to represent.  Likewise, in *In re Makhija*, 136 A.3d 539 (Pa. Cmwlth. 2016), the objector challenged the candidate's eligibility on the theory that he had lost his Pennsylvania residency when he moved to Massachusetts to attend law school. Here, there is no challenge to Candidate's eligibility under the Pennsylvania Constitution because he is, without question, a citizen of Pennsylvania.[4]  The only question is where in Pennsylvania Candidate resides.

The definitive case on the residency requirement for a public office is *In re Lesker*, 105 A.2d 376.  The Supreme Court explained as follows:

> It seems impossible to restrict the terms habitation, residence and domicile to airtight, waterproof compartments.  Their meanings seem bound to escape their lexicographical boundaries and mingle with the others since a person's place of *residence* may be identical with his *domicile,* and *habitation* is always a

[4] To be eligible for the Office of Lieutenant Governor, a person must be

> [a] citizen of the United States, who shall have attained the age of 30 years, and have been seven years next preceding his election an inhabitant of this Commonwealth, unless he shall have been absent on the public business of the United States or of this Commonwealth.

PA. CONST. art. IV, §5.

component part of *residence* and *domicile.* However, in strict technical terminology a *habitation* may be defined as an abode for the moment, *residence* a tarrying place for some specific purpose of business or pleasure, and *domicile* the fixed, permanent, final home to which one always intends to return. A person's civil status is determined by his domicile. Thus, a business man may have his family home in the suburbs of a city where he lives with his wife and children. No matter where he travels nor how long he remains away, he always returns to this abode. This is his domicile. For business reasons he may have a residence in the city, even living there for many months of the year. This residence can never become the basis for voting or for candidacy for office. If traveling, he may stay at a hotel, boarding or rooming house. This would be his habitation and, regardless of expression of intention, could never become his legal domicile.

*Id.* at 380 (emphasis in original). The Supreme Court further explained:

To accomplish a change of domicile there must be not only the *animus* to change but the *factum* as well. There must be an actual transfer of bodily presence from one place to the other. The *animus* and the *factum* do not need to be simultaneous, but until they coincide the change of domicile is not effected. In the law a domicile is as deep rooted as a tree and to transfer it from one location to another requires an operation as intensive as the digging up, loading, transportation, and replanting of an elm or maple.

One almost conclusive criterion of domicile is the *animus manendi*. There must be the intention to *remain*.

*Id*. (emphasis in original). The Supreme Court concluded that the candidate, who kept furniture and personal belongings at the residence listed on his petition and voted from there, remained domiciled at the named residence, notwithstanding the fact that he spent considerable time at another residence nearby.

In *In re Makhija*, 136 A.3d 539, the objectors claimed the candidate changed his domicile to Massachusetts while attending Harvard Law School. While

8

there, the candidate registered his automobile in Massachusetts and filed a tax return in Massachusetts, as required by Massachusetts law. He also registered to vote in Massachusetts. However, the candidate referred to Pennsylvania as "home;" used his parents' Pennsylvania address on medical and insurance policies; maintained a Pennsylvania bank account; and held a scholarship available only to residents of Carbon County. The Court concluded that on these facts the candidate had not "gained a residence" in Massachusetts while a "student at any institution of learning." Section 703 of the Election Code, 25 P.S. §2813.

*In re Nomination Petition of Pippy*, 711 A.2d 1048 (Pa. Cmwlth. 1998), is also pertinent. The relevant facts were that the candidate and his wife moved into her parents' Pennsylvania home in Moon Township, Allegheny County, upon their marriage in 1992. Later that year, they signed a six-month lease on an apartment in Coraopolis, Pennsylvania. Before the lease expired, the candidate was called to active military duty in Texas, where he and his wife lived for several years. There his wife attended college, listing her parents' Pennsylvania residence as her permanent address; she did not pay the tuition of an in-state Texas resident. In 1995, the candidate was released from active duty and returned to Pennsylvania. This Court concluded the candidate's Pennsylvania domicile was established in 1992 and continued throughout his military service, notwithstanding the fact that he voted in Texas while stationed there.

**Positions of Parties**

Acknowledging that "residence" is coterminous with "domicile," *In re Lesker*, 105 A.2d at 380, Objectors note that a domicile "is the place at which an individual has fixed his family home and principal establishment for an indefinite period of time." *In re Prendergast*, 673 A.2d 324, 327 (Pa. 1996). Objectors

9

contend that Candidate has fixed "his family home and principal establishment" at the official residence in Lebanon County. They further argue that this domicile "is presumed to continue until it is shown to have been changed[.]" *Id.* Objectors contend that Candidate abandoned his domicile in Philadelphia when he sold his house on Wayside Avenue and did not establish a domicile at 1247 Southampton Road, where he is a mere family visitor. Objectors contend that Candidate's self-serving declaration of intent to make 1247 Southampton Road his domicile did not suffice because the establishment of a domicile requires "the *actual* state of facts, not what one declares them to be." *In re Lesker*, 105 A.2d at 379 (emphasis in original).[5] Because a candidate can have only one domicile, *see In re Driscoll*, 847 A.2d at 49-50, Objectors assert that the only possible place that Candidate can be domiciled is at the official residence in Lebanon County.

Candidate responds that by taking up temporary occupancy of the Lieutenant Governor's official residence, he did not abandon his domicile in Philadelphia and transfer it to Lebanon County. He notes that a change in domicile is not done lightly; it is as difficult an operation as the "replanting of an elm or maple." *In re Lesker*, 105 A.2d at 380. Further, Candidate observes that the "replanting" of Candidate's domicile requires a finding that he has the "intention to remain" in Lebanon County. *Id*. Candidate argues that it is impossible for Candidate

---

[5] Objectors also note that Candidate was not precluded from establishing his domicile at the official residence of the Lieutenant Governor. In support, they direct the Court to *In re Contest of Election for Office of Tax Collector in Township of Newport, Luzerne County,* 121 A.2d 141 (Pa. 1956), where the Supreme Court construed Section 703 of the Election Code to mean only that a residence cannot be changed merely by reason of employment. The Court explained:

> The fact, however, that a person does not gain or lose residence *merely* by reason of his presence or absence while in the service of the government does not preclude him from otherwise gaining a residence at the place so employed.

*Id.* at 143 (emphasis in original).

10

to remain at the official residence indefinitely because by law he must leave when his term ends. When his term ends, Candidate will return to 1247 Southampton Road, where he presently votes, collects mail, sleeps (from time to time) and pays taxes. By these acts, Candidate established his domicile there. Candidate may spend more time at the official residence than elsewhere, but Section 703 of the Election Code, 25 P.S. §2813, provides a safe harbor for those whose State service or study requires a presence in a new location, even one outside Pennsylvania.

Objectors argue that Candidate's reliance on Section 703 of the Election Code is misplaced. Candidate did not lose his residence in Philadelphia by occupying the Lieutenant Governor's official residence. Rather, he lost it when he made the conscious decision to sell and vacate his Wayside Avenue home and not buy another home in Philadelphia. Because Candidate's affidavit has falsely identified 1247 Southampton Road as his residence, his nomination petition must be set aside under *In re McIntyre*, 778 A.2d 746. Candidate responds that Objectors' evidence does not show an intention to deceive the electorate; at worst the "defect" is an amendable one.

**Analysis**

At the outset, we reject Objectors' contention that Candidate had an intention to deceive the electorate. In this argument, Objectors contend that the 2014 primary election results explain Candidate's motive for this deception. However, those election results are ambiguous. It is equally plausible that Candidate did exceptionally well in Philadelphia because of his name; he was a State Senator representing Philadelphia at the time of the primary. A cursory examination of the 2014 primary election results also shows that being from Philadelphia was not very helpful to him in other counties. It may have had the opposite effect. Objectors did

11

not present an expert to resolve the ambiguous inferences that can be drawn from their election return exhibit. Nor did they present any other evidence of deception.

In *In re McIntyre*, 778 A.2d 746, this Court found that the candidate tried to make the electorate believe he lived in the City of Pittsburgh with his mother-in-law and not in Upper St. Clair, where he owned a home in which his wife still lived. His testimony was unavailing because he took no steps whatsoever to make Pittsburgh his residence, such as changing his voter registration, until after he became a candidate. By contrast, here, Candidate claimed his mother's home at 1247 Southampton Road as his residence when he sold his home on Wayside Avenue, and he continues to use his mother's address for all legal purposes. Further, Candidate began this arrangement years before he became a candidate in 2018 for the office of Lieutenant Governor.

Candidate lived at 1247 Southampton Road for several decades before he bought his home on Wayside Avenue. When he became technically homeless, it was reasonable, and he was so advised by his chief of staff, to designate the family home at 1247 Southampton Road as his domicile. This is no different than the situation in *In re Pippy*, 711 A.2d 1048, where the candidate designated his mother-in-law's home as his residence during the time he lived, worked and voted in Texas while in active military service. Simply, there is no evidence, direct or circumstantial, that would allow the Court to find, as fact, that Candidate intended to deceive the electorate.

This leaves the question of whether Candidate has correctly identified his residence on his nomination petition and in his affidavit. When determining a candidate's residence, this Court considers the following factors:

> (1) the candidate's presence or absence at the address, *In re Nomination Petition of Hacker*, 728 A.2d 1033, 1033 (Pa.

12

Cmwlth. 1999); (2) where members of the candidate's household reside, *In re Nomination Petitions of McIntyre*, 778 A.2d 746, 753 (Pa. Cmwlth. 2001) (Kelley, J. single judge opinion); *Hacker*, 728 A.2d at 1033; (3) whether the candidate pays rent on or has a lease for the property he claims as his residence, *McIntyre*, 778 A.2d at 752; (4) where the candidate sleeps, *id.*; (5) what belongings and personal effects the candidate keeps at the address, *id.*; and (6) whether the candidate owns another home to which he appears more permanently attached, *id.*; *Hacker*, 728 A.2d at 1033.

*In re Shimkus*, 946 A.2d 139, 149 (Pa. Cmwlth. 2008). In sum, a candidate's residence, reduced to its essence, is the "habitation where one has put down roots, not a place where one has hoisted a flag of convenience." *Id.* at 148.

The multi-part *Shimkus* test was derived from precedent and is a useful test in most circumstances. However, it has limited utility here.

First, the *Shimkus* test does not yield a definitive outcome on this record. Candidate sleeps most nights at the official residence, and many of his personal effects are located there. However, he also stores furniture and clothing at 1247 Southampton Road and at other places. His wife has not slept at the 1247 Southampton Road address since his inauguration, and Candidate acknowledges that he does not often sleep there. Candidate does not pay rent to his mother. There is no home, other than his mother's home, to which Candidate "appears more permanently attached." *Shimkus,* 946 A.2d at 149. Indeed, Candidate's credible testimony established an attachment to the family home at 1247 Southampton Road that is longstanding and genuine.

Second, the *Shimkus* test does not address the situation in this case, where the candidate is in State service and has been assigned an official residence owned by the State. *See* Section 703 of the Election Code, 25 P.S. §2813. Nor does the *Shimkus* test address the key facts here, namely that Candidate assigned 1247

13

Southampton Road as his legal residence for purposes of his voter registration, his driver's license and his personal financial dealings, such as health insurance and pension. The principles of *In re Lesker*, 105 A.2d 376, and Section 703 of the Election Code provide the more appropriate guide to determining Candidate's residency.

Section 703 provides that a person does not "gain[ ] a residence … while employed in the service, either civil or military, of this State…." 25 P.S. §2813. To gain a residence requires more. Further, where one plans to "remain" is critical in the acquisition of a new domicile. *In re Lesker,* 105 A.2d at 380. No Lieutenant Governor may stay in the Lieutenant Governor's official residence after his civil service to the State is completed.

Under the principles established in *In re Lesker,* Candidate did not establish a domicile in Lebanon County simply by occupying the official residence of the Lieutenant Governor. More is required in the "replanting of an elm." *Id.* at 380. Candidate never expressed the intention nor acted to establish a domicile in the official residence, where he cannot "remain" permanently.

Under Objectors' logic, a person must rent or buy another home in order to avoid a transfer of domicile when he occupies an official residence owned by the Commonwealth. Candidate dismisses this logic as no more than a "rich man's interpretation." N.T. 103. Even a rich, and thrifty, lieutenant governor might make the choice to rent or sell his personal home and put all of his belongings in storage during his occupancy of the official residence. The safe harbor of Section 703 of the Election Code protects these choices from having the unintended consequence of changing one's domicile.

In sum, Candidate did more than state an intention to make 1247 Southampton Road his domicile. He took steps consistent with that intention. It is the place where he votes, collects mail, pays taxes, stores personal effects and spends occasional nights. His occupancy of the official residence of the Lieutenant Governor is irrelevant to the determination of Candidate's residency by reason of the safe harbor provision in Section 703 of the Election Code.

## Conclusion

The Court concludes that Objectors have not met their burden of proving that Candidate incorrectly identified his residence on his nomination petition or in his affidavit. Accordingly, Objectors' petition to set aside the nomination petition of Michael J. Stack is denied.

_____
MARY HANNAH LEAVITT, President Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of          :
Michael J. Stack, Candidate for        :
Lieutenant Governor                    :    No. 162 M.D. 2018
                                       :
Petition of: Tracey L. Gordon, Ibrul   :
H. Chowdhury, and M. Karen Bojar       :


# **O R D E R**


AND NOW, this 28th day of March, 2018, following hearing on the petition to set aside the nomination petition of Michael J. Stack for the Democratic Nomination for Lieutenant Governor of Pennsylvania in the Democratic Primary of May 15, 2018, the petition is DENIED.

The Secretary of the Commonwealth is directed to certify the name of Michael J. Stack for inclusion on the ballot for the office of Lieutenant Governor of Pennsylvania in the Democratic Primary of May 15, 2018.

The Chief Clerk is directed to send a copy of this order to the Secretary of the Commonwealth.

Each party will bear his own costs.


_____
MARY HANNAH LEAVITT, President Judge